CORNELIA D. EARLE, Respondent, *v.* WILLIAM P. EARLE. Impleaded, etc., Appellant.

Immediately after the entry of a surrogate's decree finally settling the accounts of executors and ascertaining the amounts in their hands, one of them removed from the State, and on his refusal to give security, and with his assent, his letters testamentary were revoked; he thereafter ceased to act as executor or trustee, leaving the funds of the estate under the control of the remaining executors. The will vested certain trusts in the executors, not personal or involving the exercise of discretion, but attached to the office. In a subsequent action to compel an accounting by the remaining executors, and to charge them with liability for losses alleged to have been caused through their negligence, it was found that at the time of the removal of said executor the estate had sustained no loss, and that none was sustained by reason of any investment made by him. *Held,* that he was not a necessary party to the action.

Where by a will certain trusts are vested in the executors as such, an executor by accepting the office and qualifying, accepts the trusts so conferred.

Where executors or trustees permit a third party to manage and control the estate, they adopt him as their agent, are responsible for his conduct, and liable for losses occasioned by his improper or negligent management.

*It seems,* that while an executor or trustee is not liable for acts of a co-executor or co-trustee, which he has not the means of preventing or guarding against, or from which he has no reason to apprehend danger to the estate, he is bound to exercise due caution and vigilance in respect to the approval of, or acquiescence in, the acts of his associates; and if he delivers over to them the whole management of the estate, he is responsible for losses which might have been prevented by reasonable diligence upon his part.

By the interlocutory judgment herein, defendants, as executors and trustees, were held jointly liable for losses occasioned by improvident investments made by J., a son of the testator, who, with their acquiescence and assent, had taken the whole control and management of the estate.

A referee was appointed to take the accounts. Upon the hearing before the referee, W., one of the trustees, proved that his co-trustee had alone executed satisfaction-pieces of a large number of mortgages belonging to the estate, and delivered them to J. to enable him to receive payment, and claimed he should not be charged therewith. *Held* untenable; that, as the question had already been passed upon by the interlocutory judgment, the referee was controlled thereby, and was charged with the duty only of taking the account on the basis thereof.

The widow of the testator, who was the co-trustee, and held liable jointly with W., was by the will entitled to the income of one-third of the estate during life. The principal had never been in the hands of W. It was treated, however, as a fund in his hands, and he was directed to pay into the U. S. Trust Co. the proportion thereof to which the legatees who recovered were entitled to have paid to them on the death of the widow, the interest meanwhile to be paid to her. *Held* error; that, as the fund was lost by negligence with which the widow was equally chargeable, she was not entitled to recover of her co-trustee, but should be compelled to contribute the income toward her proportion of the loss; also, that it would be oppressive to require W. to deposit the principal.

Judgment, therefore, modified so as to direct, in lieu of such deposit, that W. may give jointly with the widow a bond secured by mortgage to the legatees entitled to the remainder, payable at the death of the widow, without interest.

(Argued February 1, 1883; decided October 2, 1883.)

APPEAL by defendant, William P. Earle, from a judgment of the General Term of the Superior Court of the city of New York, made August 1, 1882, which affirmed a judgment in favor of plaintiff and of certain of the defendants herein, entered upon the report of a referee to whom it was referred to take and state the accounts in accordance with the directions of an interlocutory judgment herein. (Reported below on appeal from interlocutory judgment, 16 J. & S. 18.)

This action was brought by plaintiff as legatee under the will of Morris Earle, deceased, against defendants, William P. Earle and Mary E. Earle, as executors and trustees under said will, to compel an accounting and to charge them with the funds of the estate alleged to have been lost through their negligence.

The testator died in May, 1859. By his will the two defendants above named and Charles B. Dodd were named as executors.

They were directed to invest one-third of the estate and pay the income· thereof to the widow, during her life. The residue was divided equally among the testator's seven children, the share of each to be invested by the executors, the income to be applied to the support and education of the beneficiary, the principal to be paid over, a portion on his or her arrival at maturity, a portion on arrival at the age of thirty, and the balance on arrival at the age of forty. · The principal set apart for the benefit of the widow was, upon her death, directed to be divided in the same manner as the residuary estate, and held upon the same trusts. A final accounting was had by the executors ,before the surrogate in April, 1861. The substance of the decree rendered thereon, and the further facts material to the questions presented are stated in the opinion.

*Samuel Hand* and *John M. Martin* for appellant. The appellant could not interfere to wrest the securities either out of Dodd's hands or out of the hands of the children as the representative of the executrix, their mother. (*Burt* v. *Burt*, 41 N. Y. 46.) His attitude was purely passive, and it is impossible to say that attitude was one of negligence, such as to render him liable for all their management. (*Williams* v. *Nixon*, 2 Beav. 472.) One executor may rest passive and see the other receive funds of the estate, and making no objection be deemed to assent, but that does not make him responsible for what has been received. ' (*Crofts* v. *Williams*, 88 N. Y. 384; *Paulding* v. *Sharkey*, id. 432; *Ormiston* v. *Olcott*, 84 id. 339, 346; Williams on Exrs. 1119; *Candler* v. *Tillett*, 22 Beav. 257; *S. C.*, 25 L. J. Chan. 505.) Co-executors also, like co-trustees, are generally answerable each for his own acts only and not for the acts of any co-executor. (Lewin on Trusts, 310; id. 302, 303; *Adair* v. *Brimmer*, 74 N. Y. 539, 567; *Ld. Chan. Townley* v. *Sherborne*, Bridg. 35; *Williams* v. *Nixon*, 2 Beav. 472; *Haighthorpe* v. *Milforth*, Cro. Eliz 318; *Banks* v. *Weeks*, 3 Sandf. Ch. 99; *Douglass* v. *Satterlee*, 11 Johns. 16; *Manahan* v. *Gibbons*, 19 id. 427; *Sutherland* v. *Brush*, 7 Johns. Ch. 17; *Monell* v. *Monell*, 5

id. 283.) The appellant is not liable for the moneys lost by bad investment of funds which were received by Mrs. Earle's direction, without his knowledge or consent. (*Stuyvesant* v. *Hall*, 2 Barb. Ch. 151; *People* v. *Keyser*, 28 N. Y. 226.) The executor Dodd was a necessary party to the action and there could not be a complete determination of the controversy or the questions involved without his being brought in. (Code §§ 447, 452; *Fabre* v. *Colden*, 1 Paige, 166; *Burnham* v. *Sherman*, 6 Barb. 403.)

*Richard L. Sweezey* for respondents. The interlocutory judgment was correct, and the defendant, William P. Earle, is liable to account to the respondents, according to the principles therein laid down. (*King* v. *Talbot*, 40 N. Y. 84, 85; *Jones* v. *Lewis*, 2 Ves. 240; 1 Parsons on Contracts, 132.) Having once become charged, an executor or trustee is bound to see to it that the fund is properly applied. He cannot remove his liability by turning the estate over to his co-executor or co-trustee. (*Croft* v. *Williams*, 88 N. Y. 384; *In re Glacius* v. *Fogel*, id. 434; *Morrill* v. *Morrill*, 5 Johns. Ch. 583; White & Tudor's Cases, 1794; Lewin on Trusts, 231, 240; *Lincoln* v. *Wright*, 4 Beav. 427; *Oliver* v. *Comb*, 8 Price, 127, 166; *Turner* v. *Corny*, 8 Beav. 515; 1 Parsons on Contracts, 130; *Williams* v. *Nixon*, 2 Beav. 472; *Wood* v. *Brown*, 34 N. Y. 337; *Bruce* v. *Stokes*, 11 Ves. 319; *Mesick* v. *Mesick*, 7 Barb. 120.) Where an executor by his negligence suffers his co-executor to receive and waste the estate when he has the means of preventing it by proper care, he is liable to the beneficiaries, under the will, for the estate thus wasted. (*Adair* v. *Brimmer*, 74 N. Y. 566; *Booth* v. *Brimmer*, 1 Beav. 125; White & Tudor's Cases, 1772; 1 Perry on Trusts, § 417; 1 Parsons on Contracts, 30, 132; *Clarke* v. *Clarke*, 8 Paige, 150; Lewin on Trusts, 243.) A trustee cannot delegate his authority. Therefore, if a trustee confides his duties or the trust fund to the care of a stranger or his attorney, or even to his co-trustee, he will be personally liable. (Lewin on Trusts, 231, 243, 251; 1 Perry on Trusts, §§ 402, 408;

*Brown's Accounting,* 16 Abb. Pr. [N. S.] 457 ; *Stagg* v. *Jackson,* 1 N. Y. 206; *Hood* v. *Hood,* 85 id. 570 ; *Mucklow* v. *Fuller,* Jacobs, 198; 3 Redfield on Wills [3d ed.], 613 ; 2 Williams on Executors [8th Eng. ed.], 1853 ; *Ward* v. *Butler,* 2 Mallory, 533 ; *Booth* v. *Booth,* 1 Beav. 125 ; *Baldwin* v. *Porter,* 12 Conn. 473 ; *Hanson* v. *Worthington,* 12 Md. 418 ; *In re Wilson Estate,* 2 Penn. St. 325 ; *Stiles* v. *Guy,* 4 Younge & Coll. 571, 575; *Williams* v. *Nixon,* 2 Beav. 472.) Mr. Dodd is a non-resident, and cannot be made a party, except nominally. (*Lippile* v. *Albites,* 5 Abb. Pr. [N. S.] 76 ; *Schwinger* v. *Hickok,* 53 N. Y. 280.) The removal of Mr. Dodd terminated his responsibility as to the future. (*Matter of Bull,* 31 How. Pr. 69 ; *Kelly* v. *West,* 80 N. Y. 139.)

RAPALLO, J. The objection taken by the appellant in his answer, and urged upon the trial, that his former co-executor, Charles Dodd, was a necessary party to this action, should not, in our judgment, be sustained. Almost immediately after the final accounting of all the executors before the surrogate of the city of New York had been completed, and a decree had been entered thereon, dated April 25, 1861, finally settling the accounts of the executors and ascertaining the amounts in their hands, and directing the disposition thereof, Mr. Dodd removed from the State of New York to the State of Connecticut. Application was thereupon made by Morris D. Earle, one of the legatees, to the surrogate of the city of New York for the revocation of the letters testamentary of Mr. Dodd on account of his non-residence ; and he refusing to give security as a non-resident executor, and appearing before the surrogate and assenting to the revocation of the letters, the surrogate thereupon made an order, or decree, revoking the letters and his authority to act as executor. This order was dated May 30, 1861, and from that time Mr. Dodd ceased to act as executor or trustee under the will of Morris Earle.

The trusts contained in the will were vested in Mr. Dodd in his capacity of executor, and were attached to his office. They were not personal, nor did they involve the exercise of discre-

tion.　By abandoning his office as executor, and ceasing to act as trustee, he renounced them, and they devolved upon the continuing executor and executrix, as they would have done on an administrator with the will annexed, had all the executors been removed or died.　The court, on the trial of this action, found, as facts, that at the time of the removal of Mr. Dodd the estate had sustained no loss,. and that it had not at any time sustained any loss by reason of any investment made by him.　His accounts had been finally settled, and he left the funds of the estate under the control of the continuing executor and executrix.　Whatever neglect or default occurred, was after the revocation of Mr. Dodd's letters, and was chargeable to them and not to him.　Under these circumstances, he was not a necessary party to this action.

The main controversy in the case is upon the question of the liability of the appellant to account for the fund which was, by the surrogate's decree, found to be in the hands of the executors in April, 1861.　This decree was based upon a joint account rendered to the surrogate by William P. Earle and Charles B. Dodd, executors, and Mary E. Earle, executrix; and upon this accounting it was admitted by them, and found by the surrogate, that the amount with which they were chargeable, after crediting all payments, was $206,807.36 of principal, and $5,472.29 of interest, all of which they had on hand. By their account, it appeared that these sums were invested in bonds and mortgages, State and city bonds, and cash in bank. The executors were allowed by the surrogate costs and commissions amounting to about $2,739, and were directed to set apart one-third of the principal of the estate for the purpose of paying the income thereof to the testator's widow, Mary E. Earle, during her life, pursuant to the directions of the will. This third amounted to the sum of $74,741.03, of which Mrs. Earle was to receive the interest during her life, and at her death it was to be divided among the seven children of the testator.

After setting apart this sum and paying to Morris D. Earle and James E. Earle, the two eldest sons, in full, their shares of

the principal, there remained for distribution among the remaining five children, four of whom were minors, $106,772.95 of principal, and $2,532.15 of interest, with the accumulations since April 25, 1861, and each child was also entitled to one-seventh of the fund of $74,741.03, directed to be set apart for the widow, to be paid to them at her death.

By the interlocutory judgment in this' action, William P. Earle, the appellant, and Mary E. Earle, the widow and executrix, were required to account; William P. Earle contends that he is not liable, on the ground that he never had possession of the funds or securities belonging to the estate; that up to the time of the accounting Mr. Dodd had possession of all the assets, and after the accounting of the executors, he, William P. Earle, did not take upon himself the execution of the trusts created by the will, and that after the retirement of Mr. Dodd the whole management of the estate was in the hands of Mrs. Earle and her two sons, first Morris D., and afterward James E., and they had possession of the securities, and that the appellant's position was merely passive, he taking no active part in the administration of the estate.

On these points we concur with the conclusions of FREEDMAN, J., before whom the action was tried, and whose opinion delivered at the Special Term was adopted by the General Term. Mr. Earle by accepting the office of executor, and qualifying as such, also accepted the trusts conferred upon the executors. He rendered his account as executor, wherein he charged himself jointly with his co-executor and executrix with the funds of the estate, and was by the decree of the surrogate charged therewith, and directed as to their disposition. He thus became bound jointly with the executrix to execute the decree, or to discharge himself in some legitimate way from the duties of the trust. Instead, however, of taking any steps to relieve himself from this obligation he continued to act. The decree was dated April 25, 1861, and Mr. Dodd's letters were revoked May 30, 1861, and as early as June 13, 1861, the appellant signed as executor a check drawn against the account of the estate of Morris Earle, deceased, in the City Bank, to the order

of Mr. Dodd, individually, for $9,500, to be invested in a loan by the estate on bond and mortgage, and on the 17th day of July, 1861, the appellant joined with Mrs. Earle in executing a satisfaction-piece in which they described themselves as sole acting executor and executrix of the will of, Morris Earle, deceased, and for a long series of years thereafter he from time to time, sometimes alone and sometimes in conjunction with Mrs. Earle, continued to execute satisfaction-pieces of mortgages belonging to the estate, and he also executed, as executor, assignments of mortgages held by the estate, and he never took any steps to discharge himself from his duties as executor or trustee. Under these circumstances he cannot claim exemption from responsibility as such.

He now asserts that the funds of the estate went into the hands of his co-executrix, Mary E. Earle, and that an executor is liable only for his own acts and defaults, and not for those of a co-executor, or for funds collected by a co-executor or trustee. This proposition is true as a general rule, though it has qualifications which it is not necessary to discuss here, for it is not the fact that the funds or assets of the estate went into the hands of Mrs. Earle or were administered personally by her. They consisted of cash on deposit in the National City Bank to the credit of the estate, against which account either the executor or the executrix had power to draw, and of bonds and mortgages and other securities, which when Mr. Dodd withdrew (as appears from the testimony of James Earle, who was a witness called by the appellant), were in a tin box in the bank, the key being kept in the office of Earle & Co. James testifies that Morris D. Earle took charge of the securities for a time until he became sick and left, and then his brother James Earle took charge of the key and securities, and removed the box to the safe deposit company, where, as he testified, they were under his sole control, and afterward he removed them to his own office. By the silent acquiescence of both the appellant and Mrs. Earle, and with the knowledge of the appellant, the funds were permitted to be administered, first by Morris D. Earle and then by James Earle, under whose administration

the losses appear to have occurred. These two sons appear to have constituted themselves agents of the executor and executrix and taken upon themselves the custody and management of the funds and securities of the estate, with the knowledge and implied consent of the appellant, who from time to time, at the request of James E. Earle, executed satisfaction-pieces of mortgages held by the estate, and suffered him to collect and invest the proceeds thereof. The appellant had the same control over these self-constituted agents as Mrs. Earle. It was equally his duty to supervise their action, and he was equally liable for their neglect or default. Funds going into their hands were not like funds collected by a co-executor, for a collection by such co-executor cannot ordinarily be prevented. He has the legal right and power to make collections. Such is not the case where a third party is suffered to manage the estate. The executors who permit such management adopt such party as their agent and are responsible for his conduct. But in the present case Mr. Earle would not have been justified in leaving the entire management in the hands even of the co-executrix, without supervision or inquiry, she being a female unacquainted with business, in feeble health, and whose time was engaged in the care of a large family of children, and he being an active business man, familiar with the values of property and accustomed to making investments. He owed a duty to the infants whose property the testator had intrusted to his charge, to see so far as was in his power that it was not squandered or wasted by improvident and illegitimate investments. While an executor is not liable for acts of a co-executor which he has not the means of preventing or guarding against, or from which he has no reason to apprehend danger to the estate, he is still bound to some degree of watchfulness and care, even in respect to the acts of his co-executor or co-trustee. In this case none whatever appears to have been exercised, even over the sons who were permitted to assume the office of executors.

The appellant, as is found by the trial judge, did not take possession of any part of the funds of the estate, or give any

direction about their investment, but wholly neglected to take
any care or custody of such funds, or of the bonds and mort-
gages, and now professes to have acted upon the supposition
that from the time of the accounting he was free from responsi-
bility for the estate; but nevertheless he from time to time signed
satisfaction-pieces and assignments of mortgages belonging to
the estate, and the executrix did in like manner, and the pro-
ceeds were allowed to be collected first by Morris D. Earle
until he was taken sick, and then by James Earle, who assumed
charge and invested and reinvested the funds sometimes in
bonds secured by second mortgages, sometimes on unimproved
property, and sometimes on property in New Jersey, which in-
vestments resulted in a large loss.

We think that the finding of the trial judge that after the re-
moval of Charles B. Dodd, the three funds of $74,741.09, $106,-
772.95 and $2,532.15 were within the control of the remaining
executor and executrix, William P. Earle and Mary E. Earle,
and his conclusion that they are jointly accountable therefor are
well sustained by evidence and law.

A trustee should act in relation to a trust property with
reasonable diligence, and in case of a joint trust he must exer-
cise due caution and vigilance in respect to the approval of,
and acquiescence in, the acts of his co-trustees, for if he should
deliver over the whole management to others, and betray
supine indifference or gross negligence in regard to the inter-
ests of the *cestui que trust*, he will be held responsible.
(Story's Eq. Jur., § 1275 ; *Clark* v. *Clark*, 8 Paige, 153, 160.)

We think the evidence warranted a finding that the estate
was lost through negligence on the part of the executrix and
the appellant, neither of them having paid any attention to
its safety, and both having trusted blindly to the management
of James Earle, and that the cause of the loss was his invest-
ments in second mortgages and mortgages on vacant lots,
which were insufficient securities.    And the evidence also
warranted a finding that the appellant was aware that James
Earle was investing on second mortgages.    No detailed evi-

dence was given of the losses, but the loss of the fund seems to have been assumed on the trial. James testified that the mortgages which he received when Morris D. left were paid off, the satisfaction-pieces being signed by the executor and executrix, or one of them; that as a general rule they were signed by both, but when there was a deviation from this it was a mere question of convenience whether he asked his mother or the appellant to sign the satisfaction-pieces. He, James, received the proceeds, deposited them to his own credit in the Union Trust Company, and reinvested them according to his own judgment, sometimes asking the appellant as to the value of the property mortgaged, but not going into particulars of the loans. He says that most of the second mortgages he took were cut off by the foreclosure of prior mortgages without being collected; two of them, second mortgages for large amounts, which were exceptionally good, he says were assigned to the appellant, who received from the mortgagor a shave of nine or ten per cent. The whole amount of these mortgages was paid to the estate and the proceeds were reinvested and subsequently lost. Some of the questions put to James Earle on his cross-examination assumed that the estate had been lost. They were not objected to, nor was the fact controverted. He says he has no doubt at all that he told the appellant of the money he was making by investments on second mortgages, and he has no recollection of the appellant advising against it. The appellant himself made investments on second mortgages through James Earle as his broker. The plaintiff testifies to a conversation between her mother and the appellant, in 1875 or 1876, in which he admitted that he knew that James was investing on second mortgages, and said that he supposed Mrs. Earle also knew it, and Mrs. Earle testified that in the same conversation she asked the appellant about the state of their affairs, and he told her that their money was gone through investments in second mortgages, and said that he had known for two years that James was investing money in second mortgages.

This evidence can and should be resorted to in support of

the judgment, and sustains the findings and conclusions of the trial judge and the interlocutory judgment rendered by him.

In pursuance of the interlocutory judgment a referee was appointed to take the accounts therein directed, and several points arising on that reference have been urged on this appeal.

Among others the appellant proved that a large number of mortgages had been satisfied by satisfaction-pieces executed by Mrs. Earle alone, at the request of James, and delivered to him to enable him to receive the amounts due on the mortgages, and it was claimed that this was equivalent to a receipt of the money by Mrs. Earle, and committing it to James to invest for the estate, and that she alone should be charged with these moneys. This question had already been passed upon by the interlocutory judgment, and that had adjudged that the appellant and Mrs. Earle were jointly accountable for the whole funds found by the surrogate's decree to be in the hands of the executor and executrix, and that they were not to be credited with any loss caused by the action of James Earle in dealing with said funds, or credited with any investments of the same, except where such investments were of a character which the referee should approve; and that they were not to be credited with any loss which resulted from their neglect to keep and invest said funds. This adjudication was founded on the facts before referred to, and the evidence in the case which established that the appellant was cognizant of the fact that James Earle was intrusted with the management and investment of the funds, and acquiesced in such management by him, and that both he and Mrs. Earle executed satisfaction-pieces whenever requested by him, he sometimes executing them alone, thus in effect constituting him their common agent. This fact had already been found and was established in the case, and the referee was charged with the duty only of taking the account on the basis of the judgment. It was, therefore, immaterial to the matters before the referee whether the satisfaction-pieces were executed by Mrs. Earle or by the appellant. It was the appellant's duty to look after and supervise the management of James Earle, and his neglect to do so

rendered him responsible. This responsibility had been adjudged, and the question could not be retried before the referee appointed to take the account.

It is further claimed by the appellant that the referee erred in sustaining the objections of the plaintiff and other legatees, to the accounts submitted by him. These accounts were not in conformity with the practice, and were not accompanied by any vouchers, and were unverified. Under the circumstances it may have been impracticable for the appellant to render an account in strict conformity with the practice, but, we think, substantial justice was done in this respect. It appeared that after the death of the testator, his seven children resided with their mother, and the family expenses were paid out of the common fund. The account submitted by the appellant was substantially a copy of the books kept by James Earle, and in this account were various charges for family expenses, running through a period of nearly eighteen years. The aggregate amount of the items in the account which appear to be for family expenses, schooling, medical services or articles of dress, was admitted by each of the four legatees in whose favor judgment has been rendered in this action, to be $95,000, and they consented to be charged each with one-seventh of this amount or at that rate during the period they were maintained at the joint expense, with interest, making annual rests, and in pursuance of such consents they were charged by the referee with the following sums, including interest, viz.: The plaintiff was charged with $23,092, the defendant Ellen F. Flagg, with $19,354.50, the defendant Charles Earle, with $22,871, and the administrator of Mary E. Jardine, deceased, with $17,-689.95, for their proportions of the said family expenses and interest thereon, and these sums were deducted from the amounts for which the appellant was made accountable by the interlocutory judgment.

In view of the fact that he had presented no account making any specific charge against either of these four legatees for their maintenance, and had given no proof of the amount expended therefor, we think this result is quite favorable to

him.   He claims that he offered proof in support of his account, which was excluded, but on examining the case it appears that his offer to produce testimony was general.   That it was objected that this offer was indefinite, that it was improper until a further account should be produced, and that he should not make a mere offer, but should call a witness or offer some evidence.   These objections were sustained and thereupon the counsel for the appellant asked an adjournment to enable him to call the appellant on his own behalf and to offer any other testimony.   The adjournment was granted and on the adjourned day the counsel for the appellant stated that he had no witness and nothing further to offer under the rulings of the referee, and he thereupon rested his case, and the counsel for the four legatees thereupon presented the consents before referred to, by which they consented to be charged with their proportions of the family expenses.

Thus far we find no error in the judgment and proceedings, but we think that there was error in the disposition made of the $74,741.09, of which Mrs. Earle was entitled to the income during her life.   This was treated as a fund in the hands of the appellant, and he was directed to pay one-seventh part thereof into the U. S. Trust Company, for each of the four legatees who have recovered, the principal to be paid to them respectively on the death of Mrs. Earle, and the interest to be paid to her in the mean time.

This, we think, was erroneous.   The fund was not, and never had been, in the hands of the appellant, but was assumed to have been lost by negligence, for which Mrs. Earle was, at least, equally chargeable with the appellant.   She should not be permitted to recover of her co-trustee or to compel him to provide a fund to replace that which had been lost by her own fault as much as his.   She was equally liable with him for the whole recovery and must contribute toward her proportion of it, the income of the fund which should have been set apart for her benefit.   No interest, therefore, should be paid to her or charged against the appellant with respect to this fund. All that he is bound to do is to answer jointly with her to the

legatees, who will be entitled to receive it when she dies, for the principal of the fund, and it is not payable until that time. It would be oppressive to compel him to deposit the principal presently, and simply receive the small rate of interest which would be allowed by a trust company during the residue of the life of Mrs. Earle. If he can give adequate security to each of the four legatees, by mortgage on unincumbered real estate, for the payment of their shares of the principal, without interest, at the death of Mrs. Earle, we think that would be the most appropriate way of adjusting the matter.

The judgment should be affirmed, except as to the direction to pay into the U. S. Trust Company the four sums of $11,677.41 each, and that should be modified by directing that in lieu of such deposit the appellant may give to the plaintiff and to the defendants Ellen Flagg, Charles Earle and John Jardine, administrator, etc., of Mary E. Jardine, deceased, his bonds for $11,677.41, each, payable at the death of Mrs. Mary E. Earle, without interest, secured by a mortgage on unincumbered real estate in the State of New York, of sufficient value, to be approved by one of the judges of the Superior Court of the city of New York. If such bond is given, Mary E. Earle should be required and ordered to join therein as one of the obligors. So much of the judgment as directs that the interest on said sums be paid to Mrs. Mary E. Earle during her life is reversed, and, as thus modified, the judgment is affirmed without costs to either party in this court.

All concur.

Judgment accordingly.