### *In re* COCKS' ESTATE.

*(Surrogate's Court, Westchester County. January, 1889.)*

EXECUTORS AND ADMINISTRATORS—DEVASTAVIT—LIABILITY OF CO-EXECUTOR.

An executrix allowed two of her co-executors, who were reputed to be wealthy and trustworthy, to receive the assets of the estate, which the testator had directed should be invested in a certain manner for the use of his son. She frequently inquired whether the fund was so invested, and was assured that it was. She knew that they had invested other funds of the estate contrary to directions of the will, and had protested against it. Afterwards these executors failed, and it was found that the fund, instead of being invested, had been used in their business, and lost. *Held*, that the executrix was not liable.

On settlement of executors' accounts.

John Cocks died testate in 1868, leaving surviving him his widow, Adelia Cocks, and five children, Mary, Phebe, Anna, David, and Harrison; all of whom, together with the husbands of his married daughters, he made his executors and executrices. Mary was the wife of George J. Barlow, and Phebe was the wife of Daniel E. Haviland. Said Barlow and Harrison Cocks were, at the time, partners in business, and were considered men of large means and of strict integrity. Testator directed his executors to invest in bonds and mortgages in Westchester county a sum which would net $1,000 a year, and to pay such income to his widow in lieu of dower. After a bequest of $3,000 to his daughter Anna, he left all the residue of his estate to his five children in equal shares, but directed the executors to invest the share of his son David in bonds and mortgages on land in Westchester county, to apply the income thereof to the support of himself and family, and on his death to divide the same among his children. The assets of the estate were, with the consent of the other executors, all of whom qualified, turned over to two of the executors, George J. Barlow and Harrison Cocks, who, after deducting the amount to be invested for the use of the widow, paid the residue to the children according to the directions of the will, but retained the share of David, to be invested as provided in the will. George J. Barlow and Harrison Cocks alone of the executors had possession of this fund. Mrs. Haviland, who lived near them, frequently inquired whether the fund was safely invested, and was assured that it was. The fund reserved as an investment for the use of the widow was invested by Cocks & Barlow in western mortgages, instead of mortgages in Weschester county, as directed by the will. Mrs. Haviland knew of this, and had refused her consent, and protested against it. In 1876, Cocks & Barlow became insolvent, when it was found that, instead of investing David's share, they had used it in their own business, and lost it. This proceeding is on petition of the children of David, who is dead, to compel an accounting by the surviving executors and executrices, but is virtually to hold Mrs. Phebe Haviland, as an executrix, liable for the misappropriation and loss of their father's share in the estate by her co-executors. For former reports, see 1 N. Y. Supp. 904, and 7 N. Y. Supp. 870, 871.

*William Thorp,* for petitioners.    *Wm. H. Gale,* general guardian.    *Thomas Nelson,* for Phebe C. Haviland.    *Samuel Watson,* for Harrison Cocks.    *J. A. Hudson,* for Adelia Cocks.

COFFIN, S. The affairs of this estate, and its management in different forms, have been frequently the subjects of consideration by this court. Without pausing to determine whether this may be regarded as a continuation of the accounting proceeding had in 1887, or whether the statute of limitations is a bar to the claim of the adult children of David Cocks, deceased, and is urged by the counsel for Mr. and Mrs. Haviland, it is deemed best to treat of the matter upon its merits as presented, especially as the statute of limitations cannot be successfully interposed as against the claims of the minors, or of those who became of age within one year prior to the commencement of this proceeding. The proceeding is instituted solely with a view to the recovery of the share of the estate of which David Cocks had the use of for life; and that share having been lost by the executors, who had charge of it, the question is whether Mrs. Haviland, having had nothing to do with it personally, is liable, under the facts disclosed, for that loss. It does not appear that she had any of that share, or any portion of the estate, in her hands as executrix. She simply received from Cocks & Barlow her distributive share as legatee. They were considered, by all concerned, to be men of large means, and transacting a lucrative and safe business. It is true that as early as 1872 she knew that they had invested the $10,000 in Wisconsin to secure the annuity to the widow; but it was done without her consent, and while Cocks & Barlow were regarded as amply able to meet any contingencies springing from their disregard of the provisions of the will in respect to the mode of investment. Of course, if no loss had occurred ultimately, no one would have had any ground of complaimt. She, with the other executors, exclusive of her husband, executed a bond to the widow, conditioned for the payment of her annuity. The evidence is conflicting as to whether she, at the time, knew the contents of the bond. It does not strike me as at all important whether she did or not. This case has nothing to do with that fund. The bond contained certain recitals of fact which may be regarded as established without it. Among other things, it recites that "the undersigned, for the most part, have charge and control of the estate;" and was executed by five persons, among whom were Harrison Cocks, George J. Barlow, and Mary Barlow, who were "the most part," and who had the actual custody of the assets. This was a well-known and undisputed fact. Then it proceeds to recite that the investment had not been made on bonds and mortgages in Westchester county. This was also proven without the recital in the bond. It is not easy to discover how her willingness to become personally bound for the payment of the widow's annuity, when she had abundant confidence in the pecuniary ability of Cocks & Barlow to meet all demands which might be made upon them, can affect the question of her liability for the share in controversy, which she understood to be properly invested. It is no evidence that she had any knowledge of, aided or concurred in, the management which led to the loss. Aside from these considerations, the recitals do not seem to be competent as evidence against her in this case.

The respective learned counsel have referred me to cases of recent decision in the court of appeals, on some of which both rely as sustaining their several views as to the liability or non-liability of the executrix Mrs. Haviland. They have been carefully considered with regard to the facts and the legal deductions therefrom. In the case of *Adair* v. *Brimmer*, 74 N. Y. 561, the executors had an agent to take charge of the assets, and he, with the knowledge of the executors, made advances to Charles, who was also an executor, of a sum considerably in excess of his share of the estate; when the executor Brimmer, who had a knowledge of the facts of the agent, thinking that the advances made to him already equaled his share, when they were in fact in excess, forbade the agent to advance him any more. The amount so paid in excess was lost. Held, that the other executors were liable. In *Ormiston* v. *Olcott*, 84 N. Y. 339, one of the three executors and trustees had received

all the assets and proceeds of the estate, and had the entire charge of the same. After his death it was found that much of the assets had been invested and lost, or converted by him, and mingled with his own funds. Held, that the executors and trustees were not liable for the *devastavit;* that each executor and trustee is liable only for his own acts; and that one cannot be made responsible for the negligence or waste of another, unless he, in some manner, aided or concurred therein. *Croft* v. *Williams,* 88 N. Y. 384, was a case where the facts showed, among other things, that, on a sale of some real estate, both executors were present when the purchase money was paid, and which was taken by one of them, and subsequently wasted. It was held that the executor who was passive, permitting the other to take the money, was not liable for the *devastavit.* The court says: "One, therefore, may sit passive, and see the other receive funds of the estate, and, making no objection, be deemed to assent; but that does not make him responsible for what has been received. He must, in some manner, know and assent to the misapplication. He must be a consenting party to the waste, or neglect some duty consequent upon his knowledge of a misapplication intended or in progress." The case of *Paulding* v. *Sharkey,* Id. 432, is to the same effect. There the money on a sale of real estate was paid in a check payable to the order of one of the three executors, who were all present. He, in good faith, indorsed and delivered the check to a co-executor, who drew the money and wasted it; and it was held that the other executors were not chargeable with the loss. In *Earle* v. *Earle,* 93 N. Y. 104, an agent or agents were permitted to act for the executors in investing and reinvesting a large fund. The executors, from time to time, executed assignments of mortgages, and satisfaction pieces as they were paid in; had knowledge that the agents were investing on second mortgages, without objecting; and by reason of these latter a large portion of the fund was lost. Under these circumstances the executors were held liable for the loss. In the case of *Wilmerding* v. *McKesson,* 103 N. Y. 329, 8 N. E. Rep. 665, it was held that the executor sought to be charged with the amount of the *devastavit* did not occupy the position of a passive trustee, merely joining in the receipts, etc., for conformity. He advised as investments, passed his accounts as executor, and received his commissions, consulted counsel, united in employing accountant, etc. He must have known that a large portion of the funds was used in the business of a firm of which his co-executor was a member, and through whose failure the loss occurred, and took no steps to protect the funds from the hazards to which it was thus exposed, or even protested against its employment by the firm. He was held liable, but not for a loss occurring through the abstraction of securities by his co-executor during the same period, and applying them to his own use.

None of these cases seem to reach so far as to reach a liability for the loss of David's share upon this executrix. She was present, and saw the funds representing that share pass into the hands of George J. Barlow; but that fact does not make her responsible for it. There is no evidence to show that she knew of or assented to the use of it by Cocks & Barlow, either in their business or otherwise; on the contrary, she believed, or was told by Barlow and had reason to believe, that it was properly invested. She cannot, therefore, be charged with knowing and assenting to the misapplication. To hold her liable, in the language of the court in *Croft* v. *Williams, supra:* "She must be a consenting party to the waste, or neglect some duty consequent upon her knowledge of a misapplication intended or in progress."

There is another matter which has attracted but little attention of, nor been discussed by, counsel, yet it ought here to be disposed of. The testator has another son, John C. Cocks, who resided and died in the state of Illinois, intestate, seised, as is alleged, of some real estate near Chicago. His death occurred during the life-time of his father. It is said that Harrison.

Cocks, his brother, became administrator of his estate. After the death of the testator, his executors set on foot an investigation in regard to this real estate, and found that the records of the title had been destroyed at the time of the great Chicago fire, and that the land had been sold for taxes. They paid $3,000 to redeem it, and commenced proceedings for its recovery, at a cost of $1,000 more. Then a compromise was affected; each of the five children conveying his or her interest to the claimant for the sum of $800. This simply equaled the amount of the expenditure. David thus received his share of the purchase money, as is stated; but Mrs. Haviland refused to join in the conveyance. It is assumed that the law of Illinois and our own are the same on the subject of descent, and that the testator inherited the real estate, and died seised. It was therefore a part of his estate, and has not been conveyed by the executors as such. David has a right to convey his life-interest, subject to the exercise of the power by the executors; but he could not convey the remainder. If there is any just claim of his children now, the title is vested in them, subject only to the exercise of such power. This power the surrogate's court cannot compel them to exert. At all events, Mrs. Haviland did not concur in the sale of his interest, nor in any way receive any of the proceeds. Should the assumption in regard to the law of descent in Illinois prove to be erroneous, it is not discovered how it would affect her liability. It follows from the facts and views expressed that no responsibility is fixed upon her beyond that which was determined by the decree of November, 1887.