JOHN H. BRUEN, Respondent, *v.* SOLOMON L. GILLET, Impleaded, etc., Appellant.

While, where one of two or more trustees simply remains passive and does not obstruct the collection by a co-trustee of moneys belonging to the trust fund, he is not liable for the latter's waste, if he himself receives the funds and either delivers them over to his associate or does any act by which they come into the sole possession of the latter or under his control, and but for which he would not have received them, such trustee is liable for any loss resulting from the waste.

Defendants were joint assignees for the benefit of creditors. Defendant H. collected certain moneys from the assets which he deposited to the joint credit of himself and G., his co-assignee. These deposits were withdrawn upon the joint checks of the assignees and the funds deposited with H., who was carrying on business as an individual banker. H. also collected other moneys which never came into the possession or under the control of G. H. subsequently became insolvent. In an action for an accounting, *held*, that G. was jointly liable with H. for the funds so drawn out upon the joint checks and deposited with the latter; but, *held*, as it appeared that H. paid out in the proper administration of the trust more than that amount, G. was only liable for such portion of said fund as he failed to show was properly applied; that the burden of showing such application was upon him.

Also, *held*, that interest at the rate of five per cent upon the amount not so shown to have been properly applied would be a proper allowance.

*People ex rel.* v. *Faulkner* (107 N. Y. 477); *Chambers* v. *Minchin* (7 Ves. 198); *Atty. Gen.* v. *Randall* (21 Viners' Abridgment, 534; note *a*, 9)

distinguished; *Churchill* v. *Hobson* (1 P. Williams, 241) distinguished and questioned.

The authorities upon the subject of the liability of one trustee for the acts of another, collated and discussed.

(Argued April 22, 1889; decided June 4, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made April 19, 1887, which affirmed a judgment in favor of plaintiffs, entered upon the report of a referee.

This action was brought by plaintiff, as a creditor of one Henry W. Beadle, in his own behalf and that of other creditors against defendants, as assignees for the benefit of creditors of said Beadle, for an accounting, a determination of the amount of the assigned estate in their hands, or for which they were chargeable, and a judgment directing the distribution of the fund so ascertained.

The referee to whom the account was referred found that the whole amount collected and received from the assets by defendants was $110,124.09. That after entering upon the duties of the trust Hall, who was doing business as a private banker, appropriated to his own use a portion of the trust fund by mingling them with his own funds and using them in his business, which was known to and acquiesced in by Gillet. Said Hall subsequently became insolvent. The referee charged the defendants with interest on the sums so misappropriated, amounting to $11,401.65.

He credited them with dividends paid to creditors and expenses paid .................... $83,049 11
Commissions ...............................    6,076 28
                                             _____
                                             $89,125 39

Leaving a balance for distribution of $32,400.27 ; for which sum he held both defendants liable.

Defendant Gillet, who alone appeared and defended, claimed that he was not liable, as the residue of the trust funds had

been collected and received by Hall, who had the principal charge and management of the trust estate. It appeared that all of the moneys were collected and received by Hall. Of the sums collected about $50,000 were originally deposited in bank to the credit of both defendants. These were subsequently drawn out on their joint checks and deposited in Hall's bank.

*Louis Marshall* for appellant. The defendant Gillet not having collected or received the moneys misappropriated by the defendant Hall, but such moneys having been exclusively collected and received by Hall without in any manner passing through the hands of Gillet, is not liable for the wrongful acts and breach of trust of Hall. (*Brennan* v. *Willson*, 71 N. Y. 502; *Ward* v. *Lewis*, 4 Pick. 518–524, *In re Cornell*, 110 N. Y. 351.) This is a case which calls imperatively for the application of the well recognized rule that one trustee is not liable for the acts or defaults of his co-trustee. (*Townley* v. *Sherborne*, Bridg. 35; 2 W. & T's L. Cas. 960; *Atty. Gen.* v. *Randell*, 21 Viner's Abr. 534, title, Trust, N. (*a.*) pl. 9; 2 Eq. Cas. Abr. 742; 7 Bacon Abr. 174; *Churchill* v. *Hobson*, 1 P. Wms. 241; *In re Freyer* (*Martindale* v. *Picquot*) 3 Jur. [N. S.] 485; 3 K. & J. 317; *Wilks* v. *Groom*, 3 Drew. 504; 2 Jur. [N. S.] 681; 25 L. J. Ch. 724; *Johnson* v. *Newcomb*, 11 Hare, 160; *Home* v. *Pringle*, 8 Cl. & Fin. 264; *Adams* v. *Claxton*, 6 Vesey, 225; *Ex parte Griffen*, 2 G. L. & J. 114; Hill on Trustees, 475, 476; *Custis* v. *Mason*, 12 L. J. [N. S.] 452; *Jones Appeal*, 8 W. & S. 142; 42 Am. Dec. 282; *Peter* v. *Beverly*, 10 Pet. [U. S.] 532; *State* v. *Guilford*, 18 Ohio St. 509; *Taylor* v. *Benham*, 8 How. [U. S.] 233; *Ward* v. *Lewis*, 4 Pick. 524; *Brazer* v. *Clark*, 5 id. 96, 104; *Gates* v. *Whetstone*, 8 S. C. 244; 28 Am. Rep. 284; *Croft* v. *Williams*, 88 N. Y. 384; *Sutherland* v. *Brush*, 7 Johns. Ch. 17; *Adair* v. *Brimmer*, 74 N. Y. 566; *Paulding* v. *Sharkey*, 88 id. 432; *Wilmerding* v. *McKesson*, 103 id. 329.) A devastavit by one of two executors shall not charge his companion provided he has not intentionally or

otherwise contributed to it, for the testator having misplaced his confidence in one shall not operate to the prejudice of the other. (*McCabe* v. *Fowler*, 84 N. Y. 314; Williams on Exrs. [6th Am. ed.] 9; *Sutherland* v. *Brush*, 7 Johns. Ch. 17; *Sherman* v. *Parish*, 53 N. Y. 483; *Orson* v. *Olcott*, 84 id. 339; *Banks* v. *Wilks*, 3 Sandf. Ch. 99; *Earle* v. *Earle*, 93 N. Y. 104.) Where a trust is not one for investment, but for distribution only, and the trustee sought to be charged with interest has not been guilty of any affirmative wrongful acts or of any unreasonable delay in applying the trust funds, due entirely to his fault, interest has never been charged in any well-considered case. (*Rapalje* v. *Norsworthy*, 1 Sandf. Ch. 399; *Wyatt* v. *Wallis*, 8 Lond. Jur. 117; *Westover* v. *Clapham*, 1 Coll. Ch. Cas. 177.) Where there is no unreasonable delay on the part of the trustee, and he has not sought to apply the money to his own use, he is not chargeable with interest. (*Minuse* v. *Cox*, 5 Johns. Ch. 441; *Clock* v. *Craig*, 29 Mich. 398; *Jacob* v. *Emmett*, 11 Paige, 147; *Lamb* v. *Lamb*, 11 Pick. 371; *Forward* v. *Forward*, 6 Allen, 494; *Wyman* v. *Hubbard*, 23 Mass. 332; *Stearns* v. *Brown*, 1 Pick. 530; *Hover* v. *Health*, 3 Hun, 383.) Where a trustee is not guilty of actual fraud or wrongful intention the full amount of legal interest is not chargeable to him but, at most, simple interest at a rate which is always one per cent less than the established legal rate. (*King* v. *Talbot*, 40 N. Y. 85–96; *Wilmerding* v. *McKesson*, 106 id. 329–341.)

*Roswell R. Moss* for respondent. Upon the facts, Gillet is liable equally with Hall for the funds of the assigned estate deposited in Hall's bank, and lost to the estate through his financial failure. (*Glacius* v. *Fogel*, 88 N. Y. 434, 443; *Hart* v. *Bulkley*, 2 Edw. Ch. 70; *Monell* v. *Monell*, 5 Johns. Ch. 283; *McFarland* v. *Crary*, 8 Cow. 353; 6 Wend. 297, 302, 305, 312, 324; *R. L. R. Co.* v. *Roach*, 97 N. Y. 378, 382, 383; *Ridgely* v. *Johnson*, 11 Barb. 527; *Litchfield* v. *White*, 3 Sandf. 545, 550, 551; *S. C.*, 7 N. Y. 438, 439, 444; *Matter of Dean*, 86 id. 298, 400; *Matter of Cornell*, 110 id.

351, 357 ; *Thatcher* v. *Candee*, 33 How. Pr. 145.)    Gillet is liable, not alone because he consented to Hall's receiving the funds, but because he consented to Hall's improper use of them.    (*Croft* v. *Williams*, 88 N. Y. 384 ; *Hun* v. *Cary*, 82 id. 65, 71, 72 ; *Adair* v. *Brimmer*, 74 id. 539, 562 ; *Dixon* v. *Storm*, 5 Redf. 419, 424 ; *Lucy* v. *Davis*, Id. 301, 304–309 ; *Wilmerding* v. *McKesson*, 28 Hun, 184, 185–188 ; 32 id. 243 ; 103 N. Y. 329 ; *In re Cornell*, 110 id. 341, 357, 358 ; *Hosack* v. *Rogers*, 9 Paige, 461, 468, 469 ; Code of Civ. Pro. §§ 603, 604, 1204 ; *In re Cohn*, 78 N. Y. 249, 250 ; *Case* v. *Abeel*, 1 Paige, 393 ; *Kellett* v. *Rathbun*, 4 id. 102.)    A trustee, who deposits trust funds with his own and employs them in his own business should be charged with compound interest, although he shows good reason for keeping them uninvested.  (*Berwick* v. *Halsey*, 4 Redf. 18, 20, 21 ; *Brown* v. *Ricketts*, 1 Johns. Ch. 303, 305 ; *Case* v. *Abeel*, 1 Paige, 393, 397 ; *Munson* v. *S. G. & C. R. R. Co.*, 103 N. Y. 58, 74 ; *Docker* v. *Somes*, 2 Myl. & K. 664 ; *Matter of Mairs*, 4 Redf. 160 ; *Smith* v. *Weld*, 15 Week. Dig. 369 ; *De Bayster* v. *Clarkson*, 2 Wend. 77 ; *Dunscomb* v. *Dunscomb*, 1 Johns. Ch. 508 ; *Kellett* v. *Rathbun*, 4 Paige, 102, 110 ; *Cavendish* v. *Fleming*, 5 Munf. 198 ; 4 Paige, 110 ; *Spear* v. *Tinkham*, 2 Barb. Ch. 211, 213 ; *Duffy* v. *Duncan*, 35 N. Y. 187, 191 ; 32 Barb. 587.)

PECKHAM, J.  We have lately held that one executor (and I think the rule is the same with other trustees), is responsible for his own acts and not for those of his associate ; and if the latter collect and misapply the money, the executor who has not received it is not liable for the waste.    If he is merely passive and simply does not obstruct the collection by his associate, he is not liable for the latter's waste, if guilty of no negligence himself.    But where one executor or trustee receives the funds of the estate and either delivers them over to his associate or does any act by which the funds come under the sole possession and control of the latter, and but for which he would not have received them, the executor or trustee is liable for the loss which is sustained in consequence of such

action. (*Croft* v. *Williams* 88 N. Y. 384 ; *Adair* v. *Brimmer* 74 id. 539, 564; *Monell* v. *Monell* 5 Johns. Ch. 283 ; *Langford* v. *Gascoyne* 11 Ves. Ch. 333 ; *Underwood* v. *Stevens* 1 Mer. 712; *Williams* v. *Nixon*, 2 Beav. 472.)

In *Langford* v. *Gascoyne* (11 Ves. Ch. 333), it was laid down by the master of the rolls that where a trustee was merely passive by not obstructing the reception of the money by his co-trustee, he is not liable, but if he contribute in any way to enable the other to obtain possession, he is answerable unless he can assign a sufficient excuse. In that case the money of the estate had been delivered to one of the executors and he delivered it to his co-executor, who converted it, and he was held liable for such conversion, notwithstanding it was what the master of the rolls called a very hard case.

In *Williams* v. *Nixon* (2 Beav. 472), two executors sold out stock belonging to the estate, and the proceeds were received by one. It was held that the other was responsible for its misappropriation, because the stock had been in their joint possession and each was responsible for the proper application of the funds arising from the sale. The principle upon which the liability of one trustee for the act of his co-trustee, under these circumstances, arises, is that the property, the fund, the assets of the estate having once come into the joint control or the joint possession of the trustees, it is the duty of each trustee to see to it that the fund does not go out from under his control or possession, excepting as it is applied to the fulfillment of the trust. Thus says Lord REDESDALE, in *Joy* v. *Campbell* (1 Sch. & Lef. at 341) : " If a receipt be given for the mere purposes of form, then the signing will not charge the person not receiving it, but if it be given under circumstances purporting that the money, though not actually received by both executors, was under the control of both, such a receipt shall charge ; and the true question in all those cases seems to have been whether the money was under the control of both executors. If it was so considered by the person paying the money, then the joining in the receipt by the executor, who did not actually receive it, amounted to a direction to pay his

co-executor, for it could have no other meaning; he became responsible for the application of the money just as if he had received it."

In *Adair* v. *Brimmer* (*supra*), Judge RAPALLO treats the principle as well settled that where the funds have come to the joint possession of the trustees all are bound to see to their proper application, and are responsible for a misapplication by a common agent, even without their express consent.

In *Croft* v. *Williams* (*supra*), it was stated that if an executor do any act by which the funds should come to the hands of his co-executor, and but for which he would not have received them, and he diverts or wastes them, the executor is liable for the loss. In this case there can be no question but that the funds which were deposited in the two banks to the joint credit of the assignees, thereby came under their joint-possession or control. No disposition could have been made of them without the active interference of Gillet, whose signature was necessary, not for the purpose of enabling his co-trustee to obtain from a third person a debt due the estate, but to enable such trustee to obtain and deposit with himself the money already collected and in their joint possession and control. This was a proceeding in nowise necessary for the due and orderly administration of the estate.

In cases where a debt due to the trust estate by a debtor has been paid to one of two or more trustees and the debtor has required, as a condition of such payment, that a receipt should be joined in by all the trustees, in such case the signing of a receipt by the trustees who did not personally receive the money, has been held to be merely formal or necessary for the purpose of obtaining the money from the debtor, and that they who did not receive the money, in fact, were not bound by their written admission of its receipt for the purpose named, and were not liable for the failure of the one who did, in fact, receive it to properly apply it. Of this class is the case of *Paulding* v. *Sharkey* (88 N. Y. 432). There the three executors were empowered to sell the real estate, and acting under such power, it was sold and all the executors

joined in the conveyance. But the price was paid by the purchaser by check, payable to the order of one of the executors and delivered to him. He indorsed and delivered to his co-executor, who also indorsed it and received the money, and the court held that the indorsement by the executor to whose order the check was payable was a mere formal matter, necessary for the purpose of obtaining possession of the purchase-money from the purchaser, and, as matter of fact, the possession did not come into the hands of that executor to whose order the check was payable, but that it did come into the hands of that one of them, who immediately drew the money upon the check after it was indorsed.

This is not such a case. The act of Gillet in signing the checks by which these moneys, then under their joint control, were drawn from the banks and transferred to the individual and separate control of Hall was an act but for the doing of which the moneys would not have been received by Hall, and Gillet must be held responsible for any amount which was lost in consequence of such act. It is not in the least material that Hall had originally collected these moneys, and had then voluntarily deposited them to the joint credit of Gillet and himself. It is enough that Gillet had the joint control of them after such deposit, and it was his act which substituted the separate possession of Hall for such joint control, and he must take the consequences.

We do not think that the case of the *People ex rel. Nash, Surrogate,* v. *Faulkner* (107 N. Y. 477) has any application to this case. There we held that a surrogate to whom moneys had been paid, belonging to an estate, and which had been by him deposited in good faith with a private banker in good standing and credit, doing a general banking business, pending proceedings to determine the parties entitled to such moneys, was not responsible for the failure of the banker and consequent loss of the funds before the determination of such proceedings, and while the moneys remained with him. It appeared that there was no negligence on the part of the sur-

rogate in making the deposit, and the sureties upon his official bond were held not to be liable for the loss.

In the case at bar the assignee.is held liable for the proper application of the funds, not because he assented to their deposit with a private banker, but because, such funds being under his control and in his possession jointly with his co-assignee, he assisted in drawing them out and placing them in the individual custody of his co-assignee, and, therefore, within all the cases he must be held responsible for their due application. Such responsibility, we think, is none the less clear, because the co-assignee happens to be a private banker. The deposit was, nevertheless, with him individually, and it still remains true that his exclusive possession of the funds was obtained by the act of his co-trustee, who before that had joint control and possession of the funds with him.

It is clear that in the *Faulkner Case* (*supra*), if the surrogate had also been a private banker, he would have been liable for the loss of the funds if he had deposited them in his own private bank to his credit as surrogate or to the credit of the estate to which they belonged. There would have been no change of liability in such a case, because there would have been no change of possession, for the moneys would have been in his possession just the same after the deposit as they were before. In the case at bar no escape from liability can be properly founded upon the mere fact that Hall was a private banker. When the money, through the active assistance of Gillet, passed from their joint control into the possession of Hall, the liability at once arose on the part of Gillet to see to it that those funds were properly applied by Hall, and that liability could not be lessened or extinguished upon any principle, simply because Hall was engaged in the business of a private banker. Nowhere in the books, that I have found, has the liability of a trustee been made to depend upon the good credit of the co-trustee under such circumstances. In 3 Williams on Executors. (6th Am. ed. from 7th Eng. ed. 1930), it is stated in the text that one executor placing the property of a testator in the hands of the other, who is a

banker, in good credit, the executor so depositing was not to be charged in case of loss, for if he had been a sole executor he would have had, under the same circumstances, the right to place the money in the banker's hands, and he has the same right although the banker happens to be his co-executor. But the cases cited to support that proposition do not, as I think, sustain it. They are *Churchill* v. *Hobson* (1 P. Wms. 241); *Chambers* v. *Minchin* (7 Ves. 198) and 21 Viner's Abridgment (534 Title, " Trust," note *a*, 9.)

In *Churchill* v. *Hobson* the testator had made the executor, Goodwyn, his banker during his life, and had intrusted large sums of money to him, and, at his death, made him and the plaintiff Churchill executors of his estate. Churchill paid £500 of the funds of the estate to Goodwyn, who afterwards became insolvent, and Churchill commenced the action to be discharged of the executorship, and to be indemnified against the insolvency of Goodwyn. It was claimed that Churchill ought to be responsible for the £500, because it was by his special act that Goodwyn had received it. But Lord Chancellor HARCOURT held otherwise, upon the ground that Goodwyn had been chosen a confidential cashier of the testator for large sums of money in his lifetime, and that the executor ought not to suffer for trusting him after his death, who had been made by the testator one of his executors. The case was decided in 1713, and the judgment cites no authority for the proposition, and is not entitled to much weight as against other, later and much-better-considered cases. It is founded, however, upon the trust which the testator himself, in his lifetime, put in the cashier. Even then we do not think it can be reconciled with the general principle which is so well established by the later cases already referred to, and which principle establishes that one trustee should be answerable for the acts of another when he places the funds of the estate in such other's hands, or does some act but for the doing of which such trust property would not have been received by the co-trustee. What a testator, in his lifetime, may do with his own can form no proper criterion or test as to the propriety

of the same action by trustees or executors. A man has the right to do what he will with his own, and may run such risks and take such chances as seem to him good. The liability of one trustee, under the circumstances herein spoken of, is wholly different, and cannot be determined by reference to the conduct of a testator in his lifetime, and I can see no reason for abrogating such liability in a case where the trustee happens to be a private banker any more than in any case where such trustee is in good financial credit. This latter fact has never, so far as I can find, been regarded as the least reason for modifying or extinguishing the duty of a trustee, who has once obtained joint control of any property of the estate, to see to it that such property is applied in a due course of administration of the trust.

In *Chambers* v. *Minchin* (7 Ves. 198), the subject is merely touched upon by the lord chancellor in passing. The question was not involved and no decision made in regard to it. The manuscript report of the case of *Attorney-General* v. *Randell* (Trinity Vacation, 1734), contained in Viners Abridgment (*supra,* p. 534), is not in point. That was a case where the receipt given by the two trustees was formal only, and for the purpose of obtaining from the executors the moneys bequeathed to the trustees, and which moneys the executors would not pay to a third trustee unless the others joined in the receipt, which they did. The money was, in fact, received by the third trustee, and a large part of it was by him legitimately expended for the purpose of the trust, and the balance was lost by his insolvency. The court declined to hold the two trustees, who never, in fact, received the fund, responsible for its loss.

But although the defendant Gillet is responsible for the proper application of the funds which came into the hands of Hall by reason of Gillet's act in signing the checks, yet it by no means follows that he is to be held responsible for the full amount of Hall's deficit. It was so held by the courts below, and, as we think, erroneously. It was a less sum than $50,000 that was drawn from these banks by the act of Gillet and placed in the separate custody of Hall, and in the course of

the proper administration of the trust Hall paid out nearly $90,000. He may, therefore, have paid out every dollar drawn from the banks through the aid of Gillet in the proper course of administration, and in that event he ought not to have been held liable for any loss of other assets collected by Hall and which never came into his possession or control. (*Shipbrook* v. *Hinchinbrook*, 11 Ves. 252 ; *Underwood* v. *Stevens*, 1 Mer. 712; *Williams* v. *Nixon*, 2 Beav. 472, 477 ; *Wilmerding* v. *McKesson*, 103 N. Y. 329.)

We think the exceptions taken to the referee's report are sufficient to raise the questions here discussed. The admission of the receipt of assets in the written account presented to the referee is not conclusive here as to the amounts actually received by defendant Gillet. The proof is, and, so too, is the finding, that he collected and received nothing. At the time when the accounts were made out there was no question of separate liability, as Hall was still in first-class financial credit and the account was evidently a mere statement of the total amount of the trust received and of the total amount of expenses, while the question of separate receipt or disbursement as between the assignees themselves was never thought of.

Upon the question of interest, we think the court below proceeded upon an erroneous theory. The ground of liability of Gillet in this case rests upon a neglect to fully perform the duties of his trust, in failing to see to the proper application of the moneys intrusted to Hall through his act. But there is no allegation or proof of any affirmative wrong-doing on the part of Gillet, or of the use by him of any funds from which the slightest benefit to himself arose. Both the evidence and finding are the other way.

Under these circumstances, we think that interest at the rate of five per cent upon that portion of the fund drawn out from these banks, which the defendant Gillet may fail to show was properly applied to the purposes of the trust, would make a fair rule in making up the account. (*Underwood* v. *Stevens*, *supra ; Wilmerding* v. *McKesson, supra.*) It may be that on the new trial, which must take place, it will be found that the

defendant Gillet is not responsible for any portion of the loss occasioned by the failure of Hall. The burden is on him to show a proper application of the funds which came to Hall's hands through his act.

The judgment should be reversed and a new trial ordered, costs to abide event.

All concur.

Judgment reversed.