In the Matter of the Judicial Settlement of the Accounts of
    RICHARD L. HUNT, as Sole Surviving Executor, etc., of WILLIAM
    L. HUNT, Deceased, Respondent.

FRANKLIN B. HUNT, Appellant.

*Liability of one executor for the misappropriation of a trust fund by his coexecutor.*

If an executor permits a coexecutor to collect debts due to the estate, such
    executor, in the absence of evidence tending to show that he was guilty of
    negligence in not taking notice of matters which should have aroused his sus-
    picions, is not liable for the waste or misappropriation of such trust funds by
    his coexecutor, but where the fund or property has actually come within the
    control or possession of the executors jointly, all of the executors assume the
    responsibility for the proper administration of the fund, and if they turn the
    fund over to the sole control of one of their number and he misappropriates it
    they will be liable for the misappropriation, independent of whether they knew
    or ought to have known of the misappropriation.

Evidence that the three executors of a will caused an inventory to be made of
    the personal property in their possession, elected to continue to hold such per-
    sonal property in the form in which it had been invested by the testator, and
    knowingly consented to allow one of their number to retain exclusive pos-
    session of the property, brings the case within the last-mentioned rule.

BARTLETT, J., dissented.

APPEAL by Franklin B. Hunt, from a decree of the Surrogate's
Court of the county of Queens, entered in said Surrogate's Court on

the 5th day of February, 1903, settling the accounts of Richard L. Hunt, as sole surviving executor of William L. Hunt, deceased.

*George Wallace*, for the appellant.

*Edgar Jackson*, for the respondent.

WOODWARD, J. :

William L. Hunt died in October, 1890, leaving a last will and testament, with a codicil, which was duly proved in Queens county, and letters testamentary were granted to his nominees as executors, his widow, Elizabeth P. Hunt, and two sons, Joseph G. Hunt and Richard L. Hunt. These executors duly qualified, and subsequently caused an inventory and appraisal of the personal estate, which con· sisted of three items, to be made. These were a bond and mortgage of Wright Gillies and Henry Seggermann to William L. Hunt, dated March 31, 1869, made to secure payment of $20,000; a note of Elbert D. Smith and George G. Smith for $200, and a bank account in the Metropolitan Savings Bank, bank book No. 56,869, of $1,652.12. The will directed the payment of certain specific legacies, aggregating $9,000, and the residue was directed to be invested for the use of testator's widow, Elizabeth P. Hunt, during her life and after her death this fund was bequeathed to the testa· tor's children and grandchildren, the objector, Franklin B. Hunt, being given one-sixth. It appears that immediately after the filing of the inventory and appraisal, Joseph G. Hunt, one of the executors, with the knowledge and consent of his coexecutors, took possession of the personal property mentioned in the same, and entered upon the duties of acting executor of the estate, transacting all of the business in relation thereto. It is not disputed that the said Joseph G. Hunt, while so in possession of the securities and property of the estate, collected $15,800 of the bond and mortgage, using a considerable portion of the same for his own purposes, and for the payment of principal and interest upon a certain mortgage upon real estate owned by himself, the present sole surviving executor and others as tenants in common, as well as in the construction of a certain barn upon such premises, and in other ways disposed of the trust estate. It is also admitted that the fund in the savings bank had been withdrawn and disposed of by the said Joseph G. Hunt, and upon the death of the latter in 1895 it was found that

he had made and executed to Elizabeth P. Hunt, Richard L. Hunt and Joseph G. Hunt, as executors, a certain bond and mortgage upon his home, to secure the payment of $5,000, and it is supposed that the purchase of this house was made out of the funds which the said Joseph G. Hunt had improperly diverted from the trust fund. The surviving executors took possession of what was left of the trust estate, and in their account filed in November, 1897, they charged themselves with the balance due upon the Gillies and Seggermann mortgage, $4,200; with the amount of the Smith note, $200; with the balance remaining in the Metropolitan Savings Bank, $19.39, and with the amount of the bond and mortgage of Joseph G. Hunt, $5,000; making a total of $9,419.39. It seems to be conceded that this is all that came into the hands of the surviving executors after the death of Joseph G. Hunt, and upon a citation issuing to interested parties objections were filed by the executor of Joseph G. Hunt and by the special guardian of Frank Hunt, a minor, and the matter came on for hearing before the surrogate, but the term of the then incumbent expiring no decree was entered settling the account. On the 24th day of December, 1898, Elizabeth P. Hunt, the life beneficiary, to whom was directed to be paid all the income of the residuary estate, died. Subsequently, and on the 26th day of August, 1901, Franklin B. Hunt, a minor, became of age and the legacy of $2,000, with the accumulated interest thereon, was paid over to him as directed by the will, so that the residuary estate, which should be about $11,367, has been reduced to the real estate purchased under the foreclosure of the $5,000 mortgage on the premises of Joseph G. Hunt, and a balance invested on a bond and mortgage, the exact amount of which does not appear. The appellant here is Franklin B. Hunt, who was entitled under the will of William L. Hunt to one-sixth of the residuary estate, and his claim is that the surviving executor and trustee should be charged with the amount misappropriated by his coexecutor, Joseph G. Hunt, or at least that he, having never acquiesced in the accounting, as appears to have been done by the adult residuary legatees by not filing objections to the account, should be paid the one-sixth part of what lawfully belongs to the residuary estate. The learned referee holds in effect that the surviving executor is not to be charged with the losses due to the maladministration of the funds

by his coexecutor, and from the decree entered appeal comes to this court.

The appellant urges that the fact that the surviving executor knew that Joseph G. Hunt was "hard up," and that while in that condition he purchased a new house, was sufficient to put the coexecutor upon inquiry, and that a failure to look into the affairs of the estate constituted such a degree of negligence as to charge him with responsibility for the misappropriation of the trust fund. The learned surrogate finds the facts to the contrary, and were this the only difficulty in the case we should have no hesitation in affirming the decree. As we view the matter, however, the appellant's rights in the matter now before us rest upon another ground. The learned surrogate finds as a fact, not only that Joseph G. Hunt, Elizabeth P. Hunt and Richard L. Hunt were appointed executors and qualified, but that they caused an inventory and appraisal of the personal property in their possession to be made, and that the investments mentioned in said inventory were made by the testator in his lifetime and continued by his executors after his death, and that "Joseph G. Hunt, one of said executors, took possession of the bond and mortgage, note and bank book above mentioned, and retained exclusive possession of them until his death on November 23, 1895, with the knowledge and consent of his co-executors." This brings the surviving executor under the rule of law that where the property, the funds, the assets of the estate have once come into the joint control or the joint possession of the trustees, it is the duty of each trustee to see to it that the fund does not go out from under his control or possession, excepting as it is applied to the fulfillment of the trust. (*Bruen* v. *Gillet*, 115 N. Y. 10, 14, and authorities cited.) This is not the case of a mere passive executor or trustee, who permits his coexecutor to collect the debts due to the estate. In such a case the rule is undoubted that in the absence of evidence tending to show that the executor or trustee has been guilty of negligence in not taking notice of matters which should arouse his suspicions, he is not liable for the waste or misappropriation of the funds by his coexecutor; but where the funds or property is actually within the control or possession of the executors or trustees jointly, the trustees assume the responsibility for its proper appropriation, and this duty cannot be avoided by turning

the property over to the sole control of one of their number. In *Williams* v. *Nixon* (2 Beav. 472) two executors sold out stock belonging to the estate, and the proceeds were received by one. It was held that the other was responsible for its misappropriation, because the stock had been in their joint possession and each was responsible for the proper application of the funds arising from the sale. This was the exact principle decided in *Bruen* v. *Gillet* (*supra*), and is fully supported by the authorities cited in that case.

This being the law of the case now before us, it follows that it was not necessary that the learned surrogate should find that the surviving executor knew or that he ought to have known of the misappropriation; it was his duty to see that the funds over which he had acquired dominion were used to carry out the purposes of the trust. As was said by the court in *Matter of Myers* (131 N. Y. 409, 420): "The executors were all properly charged with liability to account for and pay over the income of the trust estate, under the proofs in this case. They all qualified; they all united in causing the inventory to be made; they must all have known of the condition of the estate as disclosed by the inventory; two of them certainly had actual knowledge of the use which was made of the property; if the others did not know, they could have known by the exercise of ordinary care and vigilance that the funds had been diverted from the usual course of trust investments and were employed in the business of the new firm." This was practically the situation in the matter now before us, and, in so far as the appellant is concerned, there can be no doubt of his right to the full amount which would have been due to him had the respondent discharged his duty and refused to allow the trust fund to pass from his control, except in discharge of the duties imposed by the trust.

The decree should be reversed and sent back to the Surrogate's Court for readjustment in accord with this opinion.

GOODRICH, P. J., JENKS and HOOKER, JJ., concurred; BARTLETT, J., dissented on the ground that there is no evidence that the property ever actually came into the possession of the executors sought to be charged in this proceeding.

Decree of the Surrogate's Court of Queens county reversed and the matter remitted to said court for disposition in accordance with the opinion of WOODWARD, J.