(43 Misc. Rep. 468.)

## In re DOUGHERTY'S ESTATE.

(Surrogate's Court, New York County. April, 1904.)

1. COEXECUTORS—LIABILITY FOR DEFALCATION.

Three executors jointly hired a safe deposit box, in which they deposited the securities of the estate; the income being collected by one only, who, after some years, with the approval of the others, sold the securities, investing part of the proceeds in mortgages, and depositing the balance in a bank. One of the other executors died. The survivors filed a joint account, charging themselves with the full amount of the estate, and a decree was rendered charging them jointly with the balance admitted to be in their hands. Thereafter the executor who had taken charge of the estate obtained the consent of the other to the satisfaction or assignment of the mortgages, and procured him to indorse checks for the proceeds, which the executor managing the estate claimed he desired to reinvest. It was subsequently discovered that this executor had embezzled the entire estate. *Held*, that the other executor was liable for the loss.

2. SAME—COLLECTION AND DISBURSEMENT OF INCOME.

The action of this executor in allowing the other to collect and pay out the income was proper.

3. SAME—INTEREST.

As he was innocent of wrong, he should not be charged with interest until the time his coexecutor's defalcation was discovered, and at the rate of only 2 per cent. thereafter.

4. SAME—COMMISSIONS—COSTS.

He was also entitled to commissions and the cost of preparing the account, and to have all costs paid from the estate.

Judicial settlement of the accounts of Theodore M. Tuttle as executor of Lucinda Dougherty, deceased. Decree rendered.

Thomas Davis Day, for executors, etc.

James S. Lawson, for contestants.

THOMAS, S. In this proceeding, to judicially settle the accounts of Mr. Tuttle, one of the executors of the testatrix, the question in controversy is as to whether Mr. Tuttle should be charged for the waste and conversion of assets by a coexecutor. The facts are as follows:

Lucinda Dougherty died September 1, 1889, leaving a will, which was proved September 10, 1889, and letters testamentary thereof were then issued to her son, Theodore M. Dougherty, and to her sons-in-law, Peter Forrester and Theodore M. Tuttle. Her estate consisted almost entirely of cash, coupon bonds, and stocks of corporations, and amounted to nearly $38,000. Shortly after the executors had qualified, they attended together at the Stuyvesant Safe Deposit Company, where a box belonging to the testatrix, and containing all of her securities, was opened in their presence, a list of the securities was made by Mr. Forrester, and another box was hired in the joint names of all three executors, in which such securities were placed. An arrangement was then made with the safe deposit company by which the box thus hired was not to be permitted to be opened except in the presence of all three executors. Subsequently, and from time to time, at intervals of

about six months, the three executors attended at the safe deposit company. The box was then opened, coupons for interest were cut from the bonds, and the securities were returned to the box in the presence of all of them. These coupons and all other income on the securities were collected by Mr. Forrester, who deposited the proceeds in the Atlantic Trust Company to the credit of "Lucinda Dougherty, deceased, Peter Forrester, executor," and made the payments therefrom to numerous persons entitled to income under the provisions of the will, by check signed by himself alone. The place of deposit of the securities was in 1894 or 1895 changed to the Fifth Avenue Safe Deposit Vaults, where the same arrangement as to access to the box containing them being given only to all of the executors jointly was continued, as also was the practice as to collecting and disbursing income by Mr. Forrester individually. Theodore M. Dougherty, one of the executors, died in September, 1897, and thereafter, on February 21, 1898, an account of their proceedings as executors was filed in this court by the surviving executors, Mr. Forrester and Mr. Tuttle, with a petition for its judicial settlement. All parties in interest were duly cited in the proceeding, which ended in a decree dated March 30, 1898.

The negotiable bonds and corporate stocks of the estate were in the early part of 1897 taken by Mr. Forrester from the box in the safe deposit vault in the presence of all of the executors, and with the approval of all of them, to be sold by Mr. Forrester, and the proceeds to be invested on bond and mortgage. Three mortgages, for $2,500, $2,500, and $8,300, respectively, were obtained, all of which were payable by their terms to the three executors, and these were set forth in the account as assets of the estate. The balance of the estate in the hands of the executors, as shown by the summary statement, was $35,628.08; and all of that amount in excess of the three mortgages was, or was supposed by Mr. Tuttle to be, represented by cash deposited in the Atlantic Trust Company to the credit of the estate, but subject to the individual check of Mr. Forrester as one of the executors, and was the proceeds of sales of the securities set forth in the account. This account was in all respects a joint account of Mr. Forrester and of Mr. Tuttle, and was signed and verified by both of them. Nowhere upon its face does it appear that one, more than the other, had been active in the performance of the duties imposed upon both of them. Schedule A was stated by them to contain "a statement of all the property of the deceased which has come into our [their] hands," and is a list of money and securities representing the entire capital of the estate. In a summary statement of the account they jointly charge themselves with the full amount of this property, with all accretions, and they jointly demanded credit for all disbursements. By their joint deposition they declared that the said account contained, to the best of their knowledge and belief, "a full, a true statement of all of our [their] receipts and disbursements on account of the said estate." The decree made upon this account, on the motion of the attorneys for the accounting executors, and without opposition, charged them jointly with the balance of the estate shown and admitted to be in their hands, and directed that they distribute it as therein set forth, re-

serving to themselves their lawful commissions. The moneys then due to the parties in interest were honestly paid by the checks of Mr. Forrester on the estate funds, and a further investment of $7,000 on a mortgage payable to both of the surviving executors was also made within two or three weeks after the decree. The trusts created by the will, and not yet closed, required assets of $25,714.93, and the mortgage investments aggregated $20,300.

About the fall of the year 1899 Mr. Forrester stated to Mr. Tuttle that he desired to collect the mortgages, so as to invest the money on "better property." On this request, and without inquiring as to what was the trouble with the securities then on hand, or what new investments were contemplated, Mr. Tuttle from time to time joined with Mr. Forrester in satisfying or assigning the mortgages, and indorsed the checks for the proceeds, or otherwise permitted Mr. Forrester to obtain possession of them. Payments of income were thereafter made by Mr. Forrester until about January 1, 1903; but in the early spring or summer of that year it was learned from the confessions of Mr. Forrester that he had used the entire assets of the estate to promote a private speculation of his own, and that all had been lost, and that he was insolvent.

From the beginning to the end of the history of the estate, I do not find any fact which reflects unfavorably upon the moral purpose of Mr. Tuttle. Mr. Forrester was supposed by every one to be worthy of trust, and Mr. Tuttle never had cause to suspect him of dishonesty, and never did so suspect him until after the catastrophe, which left nothing to conjecture. The evidence tending to show the contrary was fully answered, and is unworthy of consideration. He was, however, negligent, and he failed to perform the duties of an executor. Just a little prudence on his part would probably have sufficed to prevent the utter wreck of this estate, and possibly to have saved Mr. Forrester from a temptation which proved too strong for him. The principle applicable has been stated by high authority as follows:

"But where one executor or trustee receives the funds of the estate, and either delivers them over to his associate, or does any act by which the funds come under the sole possession and control of the latter, and but for which he would not have received them, the executor or trustee is liable for the loss which is sustained in consequence of such action." Bruen v. Gillet, 115 N. Y. 10, 14, 21 N. E. 676, 4 L. R. A. 529, 12 Am. St. Rep. 764.

See, also, Matter of Hunt, 88 App. Div. 52, 84 N. Y. Supp. 790; Glacius v. Fogel, 88 N. Y. 434, 443; Earle v. Earle, 93 N. Y. 104; Wilmerding v. McKesson, 103 N. Y. 329, 8 N. E. 665; Purdy v. Lynch, 145 N. Y. 462, 40 N. E. 232; Davis v. Kerr, 3 App. Div. 322, 38 N. Y. Supp. 387; Monell v. Monell, 5 Johns. Ch. 283, 294, 9 Am. Dec. 298; Matter of Storm, 28 Hun, 499.

I cannot agree with the learned counsel for the executor in his contention that Mr. Tuttle never had possession of the assets of the estate. Such possession was obtained when all of the assets were put into a strong box, to which neither Mr. Forrester nor any other person in the world could obtain access without Mr. Tuttle's consent. It was continued during the seven or eight years while such assets were con-

tinued to be kept in that box, and were inspected by him semiannually. It was acknowledged by his joining in the formal account. It was adjudged by the decree of this court made upon the footing of this account, and that decree cannot now be reversed or disregarded. The facts in this case are much stronger than they were in Matter of Hunt, 88 App. Div. 52, 84 N. Y. Supp. 790, which is the most recently reported case of the kind, and which is binding upon me.

I cannot refuse to apply a plain legal rule, and the account of the executor will be surcharged with the full amount of the estate, but in every matter of discretion I feel that I should deal leniently with the executor. It was proper to permit Mr. Forrester to collect and pay out income, since that was a convenient method of administration. Purdy v. Lynch, supra. I will therefore charge interest only from the date of the discovery of Mr. Forrester's default, and will fix that date as July 1, 1903, from which time interest at 2 per cent. to the date of the decree will be charged. The executor will be allowed commissions and the costs of preparing the account, and all costs will be payable from the estate. Settle findings and decree and tax costs on notice.

Decreed accordingly.