THE CITY OF NEW YORK, Respondent, *v.* FRANK W. FOX and MASSACHUSETTS BONDING AND INSURANCE COMPANY, Appellants.

First Department, November 21, 1919.

Public officers — liability for public money in their possession — liability of warden of city workhouse for money of inmates deposited with him and stolen by subordinate.

A public officer having the custody of public money is liable for the loss thereof, although occurring without his fault or negligence.

The warden of the city workhouse of the city of New York, charged by the rules and regulations of the department of correction, which have the force and effect of statutes, with responsibility for the proper care and delivery of money of inmates " required " to be deposited with him, and also charged with responsibility for the conduct of his subordinates, is, together with his bondsmen, liable to the city of New York for moneys so deposited with him by inmates and subsequently stolen by a subordinate appointed by him, as moneys so taken and held become of the nature of public moneys so as to render the doctrine of absolute responsibility therefor applicable.

MERRELL and DOWLING, JJ., dissented, with opinion.

APPEAL by the defendants, Frank W. Fox and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 13th day of January, 1919, upon the verdict of a jury rendered by direction of the court in an action on a bond.

*John R. Halsey* of counsel [*William F. Delaney* with him on the brief], *Gillespie & O'Connor*, attorneys, for the appellant Fox.

*Halsey, Kiernan & O'Keeffe*, attorneys for the appellant Massachusetts Bonding and Insurance Company.

*John F. O'Brien* of counsel [*Terence Farley* and *Walter B. Caughlan* with him on the brief; *William P. Burr, Corporation Counsel*], for the respondent.

CLARKE, P. J.:

The case was tried upon stipulated facts. The defendant Fox was warden of the Workhouse, Blackwell's Island, New York City. He had general supervision over the institution, its officers and inmates. The defendant bonding company gave a bond to the city in the sum of $5,000 conditioned that he should faithfully perform the duties devolved upon him as warden and promptly account for and pay over all moneys by him received or with him deposited as such warden of the city work house in accordance with law.

Each inmate was required, upon his commitment, to deposit his clothing, money and valuables with the warden, and was entitled to have the same returned upon his discharge, less any disbursements made therefrom upon the requisition of the inmate during his commitment. The rules and regulations of the department of correction specifically provide: " The head of any institution will be held responsible for the conduct of his subordinate. * * * The head of the institution may, subject to provisions of law, designate any deputy warden, headkeeper, keeper, matron or other employee under his control, to any particular assignment or duty * * *. The Warden or officer in charge of any institution is specifically charged with the following duties * * *: 4. Power of Assignment. He shall make assignments of all employees under his control to such work and duty as may be necessary for the efficient and proper conduct of his institution. 18. Responsibility for Fines and Bail * * *. He shall be responsible for the receipt and custody of all fines or bail paid by or for prisoners and he shall turn the same over to the proper authority as required by law. * * * 24. Responsibility for Property of Inmates. He shall be held directly responsible for the proper care and delivery of clothing,

money or valuables of inmates committed to his care. He shall give each inmate a receipt for all such moneys or valuables."

One Luke T. McEvoy was an employee of the city as a prison keeper and designated by the warden to take charge of the clothing, money and valuables of the inmates committed to the care of the warden. There was a shortage in the cash account of moneys deposited by inmates of $4,020.88. Of the amount of the defalcation $2,221.17 represented moneys deposited by inmates and not returned to them at the time of the discovery of the defalcation, and $1,799.71 represented the amount of moneys deposited by inmates for which they had received the equivalent in supplies. This money was stolen by McEvoy and he has been convicted of the larceny. The defendants offered to prove that the warden exercised good faith and reasonable skill and diligence in the discharge of his official duties, and was not guilty of any negligence in his care and custody of the deposits made with him by the inmates. This was objected to and being sustained the defendants excepted. The question is whether, said moneys not being public funds, but belonging to the inmates and deposited with the warden, as required by law, the warden and his surety are responsible. The learned trial court held they were and directed a verdict for the plaintiff for $2,221.17, and from the judgment entered thereon the defendants appeal.

It must now be regarded as the settled law in this State that public officers having the custody of public money are liable for a loss thereof although occurring without their fault or negligence.

In *Tillinghast* v. *Merrill* (151 N. Y. 135) the court said: " We must consider and decide this question upon general principles and in the light of public policy. In the case of an officer disbursing the public moneys much may be said in favor of limiting his liability where he acts in good faith and without negligence, and a strong argument can be framed against the great injustice of compelling him to respond for money stolen or lost while he is in the exercise of the highest degree of care and engaged in the conscientious discharge of duty. * * * It is at this point, however, that the question of public policy presents, and it may well be asked whether it is not wiser to subject the custodian of the public

moneys to the strictest liability, rather than open the door for the perpetration of fraud in numberless ways impossible of detection, thereby placing in jeopardy the enormous amount of the public funds constantly passing through the hands of disbursing agents. Without regard to decisions outside of our own jurisdiction, we think the weight of the argument, treating this as an original question, is in favor of the rule of strict liability which requires a public official to assume all risks of loss and imposes upon him the duty to account as a debtor for the funds in his custody."

In *Yawger* v. *American Surety Co.* (212 N. Y. 292, 297), Judge CARDOZO, writing for an unanimous court, said: " It is important to bear in mind the nature of a public officer's liability for public moneys received by virtue of his office. His liability does not grow out of negligence. It is absolute, admitting of no excuse, except perhaps the act of God or the public enemy. (*Tillinghast* v. *Merrill*, 151 N. Y. 135, 142; *Smythe* v. *U. S.*, 188 U. S. 156.) If he puts the money in a safe and burglars break open the safe and steal the money, he is liable. If he puts it in a bank, and the bank loses it, he is liable."

In *Village of Bath* v. *McBride* (219 N. Y. 92) the court said: " This court held in *Tillinghast* v. *Merrill* (151 N. Y. 135) that a public officer having the custody of public moneys is liable unqualifiedly for the loss thereof, and that it is no defense to an action on the official bond that the money was lost without fault or neglect on the part of the officer. * * * The rule of strict liability laid down in *Tillinghast* v. *Merrill* (*supra*) is a very important one, and it should not be frittered away in seeking to give relief in hard cases."

The appellants concede that the law is as stated but claim that as the moneys in suit were not public moneys but belonged to the inmates the cases are not applicable and rely upon *People ex rel. Nash* v. *Faulkner* (107 N. Y. 477). In that case a mortgage executed by one Finley was foreclosed and on the sale there was a surplus which was paid to the county treasurer. Finley having died, upon the application of his administrators, an order was made directing the treasurer to pay the money over to the surrogate which was complied with. The surrogate deposited the moneys with a banker then

First Department, November, 1919. [Vol. 189.

in good standing and credit who subsequently failed. The suit was to recover from the surrogate and his bondsmen the amount uncollected from the banker's estate. In holding for the defendants the court said: " It does not follow because public policy requires that public officers who receive public money should be held to the rigid responsibility, that the same rule should be applied to public officers who receive the money of individuals who are stimulated by private interests to some watchfulness over the conduct of the officials and to some scrutiny as to the custody of their funds. The surrogate was not a public officer appointed to receive or disburse public money, and it was not even his main duty to receive, keep or disburse the money of individuals. * * * There is nothing in the policy of the law which requires that he should be absolutely responsible for such money."

The facts in the case at bar are vastly different. There was no option in the case of these unfortunate inmates. They were *required* to deposit their moneys with the warden. They had no opportunity, however much they might be " stimulated by private interests " to exercise any " watchfulness over the conduct of the officials " and any " scrutiny as to the custody of their funds." They were prisoners, under the control of the warden and his keepers, and were themselves the object of their watchfulness and scrutiny. The rules and regulations which had the force and effect of statutes provided that the warden " shall be held directly responsible for the proper care and delivery of clothing, money or valuables of inmates committed to his care." They also provided " he shall be responsible for the receipt and custody of all fines or bail paid by or for prisoners." Such last-mentioned moneys were undoubtedly public moneys. It seems to me that the warden should be held responsible for the moneys taken from the inmates by virtue of his office and in accordance with law as he is for the fines or bail taken from or for them. He assigns his keepers and employees to their specific duties. When the law says that he shall be responsible for the money of the inmates committed to his care and he appoints an employee to perform his work he adopts all that employee's acts in doing that work and is responsible therefor. I am of the opinion that public policy requires the protection of these helpless unfor-

tunates while in the custody of the public officer and that their moneys so taken and held become of the nature of public moneys sufficiently to have applied the doctrine of absolute responsibility therefor.

It follows that the judgment appealed from should be affirmed, with costs to the respondent.

PAGE and PHILBIN, JJ., concurred; DOWLING and MERRELL, JJ., dissented.

MERRELL, J. (dissenting):

It is conceded by the city that the funds deposited with Fox were not public funds. They were at all times the private property of the inmates, being held by the warden during the confinement of the owners. Upon requisition of the inmates, disbursements were made therefrom for their private purposes. At all times the inmates had partial control of such funds by being able to draw upon such deposits for private purposes, the warden being merely held responsible to turn over to such inmates upon their discharge any balance remaining after the disbursements asked by the inmates had been made. There is no claim of negligence on the part of the warden, and the case involves the sole question as to whether or not the warden is liable as an insurer for all sums of money so deposited with him for safekeeping by the inmates.

Upon the trial the learned trial court excluded all evidence respecting the theft, and held that the warden was absolutely liable for all moneys so left with him.

The appellants rely upon the case of *People ex rel. Nash v. Faulkner* (107 N. Y. 477) as authority for the proposition that where funds *not of a public nature* are paid to a public official, such public official is not in such case an insurer. In that case (*People ex rel. Nash v. Faulkner*) certain funds came into the hands of the defendant's intestate, who was a surrogate. Such funds were court funds and were deposited by the surrogate with one Cone, a banker. The surrogate had given a bond for the faithful performance of his duties which seems to be as strong as the one given by the defendant bonding company in the instant case. The Court of Appeals held, Judge EARL writing the opinion, that the money being lost

without the fault or negligence of the surrogate, the surrogate could not be held responsible therefor. In referring to an apparently contrary rule, adopted in other jurisdictions, to that stated in the case under considerations, Judge EARL said: " But whatever the rule may now be in the Federal courts, and in many of the other States, it is not the settled law of this State that public officers who have given bonds for the faithful discharge of their official duties, become debtors for the public moneys which come into their hands in their official capacity, and are absolutely liable for such moneys although lost without their fault or negligence." (p. 485.)

" When a case arises against an officer for not paying over and accounting for public moneys intrusted to him in his official capacity, it will be necessary to determine whether his liability in the absence of statutes specially defining it, shall be governed by the common law, or whether the broad and more rigid rule of responsibility laid down in the cases above referred to shall be enforced in this State." (p. 487.)

The *Faulkner* case is cited in *Bruen* v. *Gillet* (115 N. Y. 17) and in reference to that case Judge PECKHAM said: " There we held that a surrogate to whom moneys had been paid belonging to an estate and which had been by him deposited in good faith with a private banker in good standing and credit, doing a general banking business, pending proceedings to determine the parties entitled to such moneys, was not responsible for the failure of the banker and consequent loss of the funds before the determination of such proceedings, and while the moneys remained with him."

The Court of Appeals has held otherwise in respect to *public funds*, and the cases are very learnedly reviewed by Judge BARTLETT in *Tillinghast* v. *Merrill* (151 N. Y. 135), which is the leading case and the one in which the law was finally settled. An early case in this State wherein the question of the liability of a public official for public moneys paid to him was up for review was that of *Supervisors of Albany County* v. *Dorr* (25 Wend. 440). Dorr was a county treasurer and received as such official certain public moneys. Such moneys were stolen from his office without any negligence on his part. The question came up on demurrer, Chief Justice NELSON and Justices BRONSON and COWEN holding that a public

official intrusted with the receipt and disbursement of public moneys or funds cannot be held responsible for such moneys or funds when actually stolen from his office without any negligence or fault on his part. The case was appealed to the Court of Errors, where the judgment was affirmed by an equally divided court. (7 Hill, 583.) While the same question was considered in *Muzzy* v. *Shattuck* (1 Den. 233), the decision in the *Dorr* case was not overruled, as has often been claimed. The rule, as laid down in the *Dorr* case, remained unchanged until the decision of the Court of Appeals in *Tillinghast* v. *Merrill* (*supra*). In the last-mentioned case, Merrill, who was supervisor of his town, held certain school moneys paid to him by the county treasurer for the purpose of disbursement. He deposited such money with a firm of private bankers to his credit as supervisor. The banking firm failed and the money was lost. Action was brought by Tillinghast, as county treasurer of the county of Madison, to recover the moneys thus lost, and judgment was obtained therefor against Merrill. On a review of the judgment in the Court of Appeals, Judge BARTLETT in his opinion said: " In the case of an officer disbursing the public moneys much may be said in favor of limiting his liability where he acts in good faith and without negligence, and a strong argument can be framed against the great injustice of compelling him to respond for money stolen or lost while he is in the exercise of the highest degree of care and engaged in the conscientious discharge of duty. When considering this side of the case it shocks the sense of justice that the public official should be held to any greater liability than the old rule of the common law which exacted proof of misconduct or neglect.

" It is at this point, however, that the question of public policy presents, and it may well be asked whether it is not wiser to subject the custodian of the public moneys to the strictest liability, rather than open the door for the perpetration of fraud in numberless ways impossible of detection, thereby placing in jeopardy the enormous amount of the public funds constantly passing through the hands of disbursing agents."

The rule, thus, for the first time, adopted by the Court of Appeals, seems to have followed earlier decisions of the United States Supreme Court with reference to the loss of

public funds. (*United States* v. *Thomas*, 15 Wall. 337; *United States* v. *Prescott*, 3 How. [U. S.] 578.)

*Tillinghast* v. *Merrill* was followed by the Court of Appeals in *Village of Bath* v. *McBride* (219 N. Y. 92) and in *Yawger* v. *American Surety Co.* (212 id. 292). But in both of said cases public moneys and not private moneys were involved.

As to public funds, it seems to be now the well-established rule, both of the courts of this State and of the United States, that a public official having custody of such funds is an insurer thereof and is personally responsible for their loss.

In the case at bar, however, the defendant Fox was simply the custodian of the funds of private individuals. The funds which came into his hands were not of a public nature, and still remained under the control of the inmates of the institution, being at all times subject to disbursement upon their requisition. The warden occupied no more confidential relation nor did he owe any greater duty to the general public than any court clerk or official, referee or receiver into whose hands moneys belonging to a litigant are ordered to be paid.

As above stated, Judge BARTLETT, in *Tillinghast* v. *Merrill*, very frankly states that " it shocks the sense of justice that the public official should be held to any greater liability than the old rule of the common law," and it is apparent that the Court of Appeals adopted the rule above set forth with reference to public funds only as a matter of public policy. We do not think the rule should be extended beyond the point indicated by the court in that case. To hold that a public official is in any case an insurer in respect to private funds left in his care would be extending the rule beyond the point thus far indicated by the Court of Appeals.

In the instant case there is no allegation of negligence or fraud on the part of the defendant Fox, and we think that the doctrine enunciated in *People ex rel. Nash* v. *Faulkner* should be applied, and that the rule laid down in *Tillinghast* v. *Merrill* should not be extended.

It follows that the judgment appealed from should be reversed, and the complaint dismissed, with costs.

DOWLING, J., concurred.

Judgment affirmed, with costs.