### GIBBS vs. MENNARD.

Where the defendant, who was a resident of Cape Breton, as the master of a merchant vessel, executed a bond at Turks Island in the penalty of £1000, with the complainant as his surety, conditioned that the vessel of which he was master should not, upon her departure from the Bahama Islands, carry out of the government thereof any slave or servant without leave of the owner or master, and upon the sailing of the vessel a slave, who had concealed himself without the knowledge of the defendant, was thus transported from Turks Island to New-York, whereupon a bill was filed against the defendant, to compel him to indemnify the complainant as his surety in the bond, and for a ne exeat; *Held*, that the complainant was not entitled to a ne exeat until he had been actually sued, and a judgment had been recovered against him upon the bond, as such surety for the defendant.

In an ordinary case of suretyship for a debt which is justly due, if the principal debtor neglects to pay it at the time stipulated in the contract, the surety may file a bill against such debtor and the creditor, to compel the former to pay the debt and the latter to receive it, and thus to relieve the surety from further liability. But this principle of equity is not applicable to the case of a surety in a bond to the government, where a breach of the condition is a forfeiture of the whole penalty of the bond ; as the court of chancery will not lend its aid to enforce a forfeiture or penalty against the principal in the bond, before the surety has become absolutely fixed with the payment of the penalty by the recovery of a judgment against him as such surety.

January 23. THIS was an appeal from an order of the vice chancellor of the first circuit discharging a ne exeat. The complainant's bill stated that the brig Felix, of which the defendant was master, was at Turks Island in May, 1835, and while there a bond was executed to the king, by the defendant as principal and the complainant as surety, in the penalty of £1000, currency of the Bahama Islands, conditioned that the brig Felix should not at her departure carry out of that government any servant or slave without leave of the master or owner ; that when the brig sailed she had on board and brought with her to New-York a slave or servant without leave of his master or owner, and that by reason of the premises the bond became forfeited and the complainant, as surety for the defendant, became liable to pay the penalty of the bond, which is equal to $2500, U. S. currency. The bill also charged that the defendant was about to depart

from this state to his residence at Cape Breton. The bill was not sworn to by the complainant; but his brother, as his agent or attorney, annexed thereto an affidavit, in which he swore that he saw the slave, or servant, whom he knew to belong to the estate of R. Smith at Turks Island, on board the brig at New-York; that the defendant admitted he had been brought from that island without leave of his master or owner; and that the defendant was about to sail from New-York to Cape Breton, where he resided. The agent also swore that the complainant was then at Turks Island, and that from the information received from him and from the defendant he believed all the allegations in the bill were true. Upon the motion the defendant produced his own affidavit, and the affidavits of several other persons who came with him in the brig, from which it appeared that the colored man secreted himself on board before the brig sailed, and was not discovered by the defendant until it was too late for him to turn back; and that upon his arrival at New-York, the defendant endeavored to send him back, and had engaged a passage for him in another vessel, when he was taken from on board the brig by order of the civil authority and placed beyond the defendant's control.

*E. Paine*, for the complainant.

*F. B. Cutting*, for the defendant.

The Chancellor. From the facts which are stated in the bill, and in the affidavits in this case, independent of the denial of the defendant in his answer that the complainant ever signed the bond as his surety either by his consent or with his knowledge, which I lay entirely out of view, as it appears to be doubtful whether the answer was regularly before the vice chancellor on the motion, I think the defendant was properly discharged from custody on the ne exeat; and the bond given to the sheriff should also have been delivered up and cancelled.

In an ordinary case of suretyship for the payment of a debt, the surety, after the debt has become due, may institute a suit in equity against the principal debtor and the creditor, for the purpose of compelling the former to pay the debt and the latter to receive it, and thus to relieve the surety from further responsibility. (*Warner* v. *Beardsley*, 8 *Wend. Rep.* 199. *King* v. *Baldwin*, 2 *John. Ch. Rep.* 561. 17 *John. Rep.* 384, *S. C.*) In the case of *Sealy* v. *Laird*, (3 *Swans.* 368,) referred to by the appellant's counsel on the argument, where Lord Alvanley, upon an ex parte hearing, and after much hesitation, allowed a *ne exeat*, the surety had actually been sued for the debt which the principal was in equity bound to pay, and a judgment had been recovered against him therefor. And I am not aware of any case which has gone farther than that, in giving equitable bail to the surety in a suit against the principal debtor.

In the case under consideration the bond is in the nature of a penalty or forfeiture. And if the condition thereof is broken, the government, or sovereign, to whom it is given may at law recover the whole $2500 as a stipulated forfeiture, and without reference to the actual injury sustained by the master or owner of the colored man who escaped from servitude on board the brig. (*Ray* v. *The Duke of Beaufort*, 2 *Atk. Rep.* 194. *Benson* v. *Gibson*, 3 *Idem*, 396. *The United States* v. *Hatch and Barstow*, 1 *Paine's C. C. Rep.* 336.) And it would be contrary to the settled principles of this court to interfere actively, either in behalf of a surety or otherwise, to compel a party to pay a forfeiture or penalty before it had been legally ascertained that either the defendant or his surety would or could be compelled to pay such penalty. Under the circumstances of this case it is at least doubtful, notwithstanding the opinion of the agent who has sworn to his belief of the truth of the allegations contained in the bill, whether either of the parties to this suit are legally liable for the payment of the bond. Without knowing, however, the precise terms of the colonial law under which the bond was taken, it is impossible to form a correct opinion on that question. And it is not pretended in this case that the complainant's agent had any other

1837.

Gibbs
v.
Mennard.

knowledge of the terms of that law than what might be inferred from the condition of the bond. But whatever may be the legal rights of the obligee, if this colored man escaped on board of the brig without any fault on the part of the master or of those under his control, and the defendant attempted, in good faith, to restore the slave to his master but was prevented by the interference of the civil authorities of this country, to which the defendant did not belong, I cannot believe it probable that the government of the Bahama Islands, or any other civilized government, ever would enforce this penalty against one of its own citizens who stands in the situation of an innocent surety. If the bond is forfeited at law, probably no suit in equity could be instituted by the surety at Turks Island to be relieved against the penalty. But the governor and his council, who constitute the court of chancery for the Bahamas, would undoubtedly, in another capacity, remit the forfeiture upon the facts disclosed here. At least I may safely say that the court of chancery there, which possesses the ordinary jurisdiction and is governed by the general principles which are applicable to the court of chancery in the mother country, would not grant a *ne exeat insulis*, or sustain a bill in equity against this defendant to compel him to pay this penalty, before any proceedings had been instituted against the surety for the recovery thereof. And as these parties, from their residence, appear to be both British subjects, and the defendant was on the point of departure for his own domicil at Cape Breton when this bill was filed, the complainant could not reasonably call upon this court for the exercise of its extraordinary jurisdiction to enforce the payment of the penalty or forfeiture, when it is very evident that no such relief would have been granted to him by any of the courts in his own country.

The order appealed from must therefore be affirmed, with costs.