HUGH K. COOPER, plaintiff in error, *v.* ISRAEL W. CROSBY *et al.* defendants in error.

*Error to Sangamon.*

The biddings at a Master's sale will be opened, on motion, if it be shown that there has been any injurious mistake, misrepresentation or fraud, and the reported sale will be rejected, or the order of ratification rescinded, and the property will be again sent into market and re-sold.

When a sale of mortgaged property has been made, the party having the equity of redemption acquires a legal right to redeem it from such sale in the manner provided by law.

MOTION, in the Sangamon Circuit Court, to set aside a Master's sale of mortgaged estate, &c., made by the plaintiff in error, who was complainant in the suit of foreclosure. The foundation of the motion is stated by the Court. It was heard at the November term 1846, before the Hon. Samuel H. Treat, when the motion was denied.

*A. Lincoln,* for the plaintiff in error.

*S. T. Logan,* for the defendants in error.

The Opinion of the Court was delivered by

PURPLE, J.* On the 8th day of July, 1843, Crosby, one of the defendants, executed to Cooper, the plaintiff, a mort-

---

* Justices THOMAS and DENNING did not sit in this case.

gage upon several lots in the town of Springfield, and afterwards, and subsequent to the recording of his mortgage by Cooper, conveyed his equity of redemption in the same to the defendant, Robbins.

On the 24th March, 1846, Cooper foreclosed his mortgage in Chancery in the Sangamon Circuit Court, making Robbins a party to the suit. At this time, as appears by the decree, there was the sum of $608 due upon the mortgage, for the payment of which the mortgaged premises were directed to be sold. The sale took place on the 24th October, 1846, at which Cooper attended and bid in the property for the sum of $269·50. Two days subsequent to this sale, Cooper prepared a notice, which was soon after served on the defendants, that at the next term of the Circuit Court of said county he would move to set aside the sale. At the November term succeeding the date of the notice he presented his application, based upon the affidavits of himself and his attorneys. Cooper's affidavit shows that his attorneys made out a statement of the amount that he was to bid upon each lot, apportioned in such manner as to cover his whole claim with costs; and his, (with their affidavits,) also discloses that they advised him to bid on each lot the amount thus estimated and apportioned. Cooper further states that he was mistaken in the advice or instruction thus given him by his counsel, and that his impression was that he was to purchase in the property at a low price, and not to permit the same to be sold to any other person at a less sum than the estimated price for each lot; that Crosby is insolvent, and he fears that Robbins, who is the assignee of the equity of redemption, will redeem the property from the sale so made, and that he will lose the residue of his debt, unless the sale shall be set aside and he be permitted to increase his bids.

The Circuit Court overruled the motion, and approved the report of the Master who had made the sale, to reverse which the plaintiff prosecutes this writ of error.

It has been conceded on the argument, that the rule in England relative to opening biddings on a Master's sale, which was almost a matter of course upon the offer of a reasonable advance on the amount bid, if the motion was made

before the confirmation of the report, owing to the difference in the manner of conducting the sales in the two countries, has not obtained in this.

From an examination of the authorities submitted on the argument, the rule here seems to be, that if it be shown that there has been any injurious mistake, misrepresentation or fraud, the biddings will be opened, the reported sale rejected, or the order of ratification rescinded, and the property again sent into the market and re-sold. Barbour's Ch. Pr. 537, 40; 5 Munroe, 492; 6 Paige, 261; 4 Kent's Com. 191–2; 2 Harris & Gill, 346.

In this case there is no pretence that there has been any misrepresentation or fraud, and it is only alleged that Cooper was mistaken in reference to the advice or instructions of counsel, as to the proper course to be pursued by him.

It is difficult to perceive how this misapprehension of his can be considered more or less, than an error in relation to the law bearing upon the case, against which it is plain a Court of Equity could not relieve him. What fact in relation to the sale, or any matter connected with it, did he mistake? The advice which his counsel gave him, was plain and simple. He could not have misunderstood it without being liable to the imputation of gross negligence; and if he did so, it was a mistake not superinduced by any party or stranger to the transaction, nor even by his professional advisers.

He knew precisely what amount he bid upon each lot, and how much of his debt would be satisfied upon the purchase. He knew, or at least it is not shown that he has since discovered the insolvency of Croswell. It is not pretended that he was in the least deceived, even by himself in this. But probably he did not know that Robbins could redeem by paying the amount bid by him at the sale, and ten per cent. interest thereon. This was a question of mere law, which he was bound to understand, with or without advice. As to the effect of such redemption we express no opinion. That question does not arise.

The error under which he labored then, was, that in bidding less than the amounts which he had been instructed to

offer for the various lots, in law, he was not securing the title to himself at less than their real value, nor his whole debt, if the property should be redeemed. It is clear from his whole statement, that if he had understood the law, he would never have made, or complained of any mistake of facts.

It is urged by the plaintiff's counsel, that Robbins having purchased the lands with a knowledge of the existence of the mortgage, and of the plaintiff's right to prior payment, the plaintiff had the superior equity; and that if the sale is set aside, and he is permitted to purchase the same at a higher price, Robbins will not be injured, he having originally bought subject to the plaintiff's mortgage.

It may be admitted that such was the case before the sale. But when that had once fairly taken place, and all persons interested had had an equal chance of purchasing, Robbins acquired the legal right to redeem the land in the manner provided by the law, and there remained no superior equity in the plaintiff to divest him of this right.

We think, too, that we can discover that it would be an unsafe and dangerous precedent under these circumstances to permit this sale to be set aside; that it might operate as an inducement to purchasers at such sales to bid much less than the real value of the property offered, with a view to speculation, and then if they should suspect that the land was about to be redeemed, apply to the Courts under the pretence that they did not understand the law, to permit them to bid a larger sum, and thus seriously prejudice the rights of the defendant and his other creditors; and we can not well see why any such purchaser may not, with the same propriety as the present plaintiff, come into Court and ask relief upon the ground on which this case is presented.

The case of the *President &c. of the Ontario Bank* v. *Lansing*, has some of the features of the one now under consideration. In fact, it is difficult to draw a distinction in principle between the two, or show that, in that case as well as this, the mistake was not one of law instead of fact. The plaintiffs there had a judgment, which was a lien upon land,

which was incumbered by a prior mortgage. He agreed to purchase in the land upon the sale made on his execution, and out of the proceeds to pay the mortgage, amounting to $2331·71. He bid $2560·00 for the land, and after the sale took an assignment of the mortgage and bond, which, as collateral security, accompanied it. The defendant claimed to have the bond surrendered, alleging that under the agreement and terms of the sale, the same was paid and satisfied. There were junior judgment creditors, and the purchaser, apprehensive that if compelled to surrender the bond under the contract, his bid for the property would only amount to $218·29, the difference between the amount due on the mortgage and the price at which he had purchased in the land, and that other judgment creditors would have a right to redeem, upon the payment of this sum, and that he would lose the amount advanced upon the mortgage; applied to have the sale set aside, which was done.

It will be remarked, however, that this is a single decision, which appears to have been made under the peculiarly embarrassing circumstances in which the party had placed himself, and it would seem in the exercise of somewhat enlarged and liberal equitable principles. No general rule, as applicable to such cases, is laid down, nor a single authority referred to by the Court, and we think that but few if any can be found which would sustain it as a principle. In our opinion, the Circuit Court decided correctly in this case.

The decree or order is therefore affirmed, with costs.

*Decree affirmed.*