### PALMER et al. v. WARD et al.

(Supreme Court, Appellate Division, Second Department. March 4, 1904.)

1. ADMINISTRATORS—RIGHT OF ACTION BY SURETIES—SCOPE OF RELIEF.

Suit was properly brought by sureties of administrators against them and their successor to compel an accounting between the parties, to ascertain the amount of the estate, to ascertain the distributive shares of defendants as next of kin and apply the same to pay the damages caused

by their default, to ascertain the amount thereof, and have a judgment entered against them in the first instance and plaintiffs decreed secondarily liable, and to enjoin their successor from prosecuting the bond.

2. SAME—JOINT LIABILITY.

An administratrix, who signed joint checks with her coadministrator, thereby permitting him to draw on their joint account as administrators, whereby he obtained money which he misappropriated, but which he falsely represented to her was to be used in paying debts of the estate, is jointly liable with him therefor.

3. SAME—NEGLIGENCE—PRESUMPTION.

Where a check is drawn to the order of two administrators, and is indorsed by one of them, and left by her with the other for deposit in the estate account, no presumption of negligence arises from her indorsement so as to render her jointly liable with him for his conversion of the money thus obtained.

4. APPEAL—REVIEW—FINDING OF FACTS—SUFFICIENCY OF EVIDENCE.

Unless the proof so clearly preponderates to an adverse conclusion that it can be said with reasonable certainty that the court erred, a reversal of its finding of a fact is not justified.

5. ADMINISTRATORS—NOMINAL CONNECTION WITH A COADMINISTRATOR—CONSENT OF SURETIES.

Evidence considered, and *held* to sustain a finding that an administratrix consented to apply for letters jointly with another, and accepted the grant thereof on the understanding, assented to by their sureties, that her connection with the administration should be nominal and passive, and that her coadministrator should be the active administrator of the estate.

6. SAME.

Sureties may consent to become liable for the joint administration of two administrators under an arrangement that one of them should do no more than sign all papers presented to her by the other, and if they do so she cannot be held in default as to them for acting accordingly.

Appeal from Special Term, Kings County.

Action by George W. Palmer and another against Henrietta Ward and others. From a judgment for defendants, plaintiffs appeal. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS, WOODWARD, and HOOKER, JJ.

Thomas F. Magner, for appellants.
J. Aspinwall Hodge, for respondent Ward.
Harry E. Lewis, for respondent Neill.

JENKS, J.   The two plaintiffs are sureties on the official bonds of two administrators. The three defendants are the two persons who were such administrators and their successor. The suit arises out of a misappropriation and conversion of the funds of the estate by the defendant Cloutier, one of the former administrators, who seems to have fled the state before this suit was begun. The prayer asks that an accounting be ordered between the parties so as to ascertain the amount of the intestate's estate; that the distributive share of two of the defendants, as next of kin of the intestate, may be ascertained and set off against and applied to the payment of the damages caused to said estate by the violation of the condition of the said bond; that the amount of the defalcation of the said former administrators may be

ascertained, and that judgment may be entered against them in the
first instance; that it may be decreed that the plaintiffs are secondarily
liable therefor after the defendants; and that an injunction be granted
restraining the present administratrix from prosecuting the plaintiffs
on the bond whereon they are sureties. There are authorities which
go far to sustain the propriety of such a suit. Gibbs v. Mennard, 6
Paige, 258; Washington v. Tait, 3 Humph. (Tenn.) 543; Ardesco v.
N. A. Mining and Oil Co., 66 Pa. 375; Delaware, Lackawanna &
Western R. R. Co. v. Oxford Iron Co., 38 N. J. Eq. 151; The Com-
monwealth v. Wenrick, 8 Watts (Pa.) 159. The record shows that at
the trial the defendant Ward moved to dismiss the complaint upon the
pleadings. After argument this motion was withdrawn, and the parties
submitted their entire differences upon the merits to the determination
of the court. Aside from this submission, I think that the equity court
could retain the case "for all purposes, and could decree a complete
administration, settlement, and distribution of the estate." Sanders v.
Soutter, 126 N. Y. 193, 200, 27 N. E. 263. The defendants Cloutier
and Ward in their administration were "jointly liable for joint acts
and severally liable for their own acts." The sureties are "liable for
the joint acts of the principals and for the individual defaults of each."
Nanz v. Oakley, 120 N. Y. 84, 90, 24 N. E. 306, 9 L. R. A. 223. The
court found that Cloutier's misappropriation and conversion, without
the knowledge of any of the other parties to this action, was $4,132.78,
and that a large part of that sum was drawn out of moneys deposited
in a bank to the credit of Cloutier and Ward as administrators, and
was "secured" by Cloutier's drawing and signing checks which he
procured to be also signed by Ward, by falsely representing to her that
they were to be used in the payment of the debts of the estate. The
evidence warrants this finding. Under the authority of Bruen v. Gillet,
115 N. Y. 10, 21 N. E. 676, 4 L. R. A. 529, 12 Am. St. Rep. 764, the
defendant Ward, generally speaking, would be liable. Her act in
signing the joint checks, which permitted Cloutier to draw upon their
joint account as administrators, was an act whereby alone Cloutier
obtained the money, and therefore she is responsible as Gillet was held
responsible in Bruen v. Gillet, 115 N. Y. 17, 21 N. E. 676, 4 L. R. A.
529, 12 Am. St. Rep. 764. See, too, Matter of Provost, 87 App. Div.
86, 84 N. Y. Supp. 29.

The court finds that an item of $552.12, which was deposited in the
Greenpoint Savings Bank to the credit of the intestate, was withdrawn
by Cloutier on his sole signature, and was converted by him. And the
court further finds that an item of $1,000 was represented by a check
drawn to the order of Cloutier and Ward, administrators, which was
indorsed by Ward as administratrix, and left by her with Cloutier for
deposit in the estate account. These items are on a different footing
than the main part of the money that was converted by Cloutier; for,
in the absence of her negligence, Ward would not be liable therefor.
Paulding v. Sharkey, 88 N. Y. 432; Adair v. Brimmer, 74 N. Y. 539;
Bruen v. Gillet, supra; Matter of Provost, supra. No presumption of
negligence arises from the act of such indorsement (Adair v. Brimmer,
supra, p. 567), and there is no evidence that warrants a finding of her
negligence in these two instances.

The theory of the plaintiffs is that the defendant Ward, as administratrix, was guilty of negligence, fraud, misconduct, and a violation of trust, and assisted—connived at—Cloutier's acts, and procured and gave an opportunity to him. Their proposition is that, although Ward took possession of the funds of the estate jointly with Cloutier, she took no part in the administration, but was merely a passive thing, blindly assenting to all that Cloutier did, and signing without question checks in blank drawn against their joint account as administrators. The court found that "the defendant Henrietta Ward consented to apply for such letters of administration jointly with the said Cloutier, and accepted the grant thereof, upon the understanding, assented to by the plaintiffs, that her connection with the administration of the estate should be nominal and passive, and that the said Cloutier should be the active administrator of the estate." The learned counsel for the appellants states in his brief that upon this appeal the question now is: "Did Henrietta Ward assume the duties of administratrix at the request of the plaintiffs, to be a mere passive administratrix, and did she as such administratrix sign away the estate by reason of the request of the plaintiffs, the bondsmen, that she should do so if Cloutier, her coadministrator, should ask her?" There is a sharp question of fact involved in this finding. The witnesses agree that immediately after the death of the intestate there was a meeting at the house of Ward, when the question of administration was discussed and determined. Present were the defendant Ward, her married daughter, Neill, Messrs. Palmer and Martin, the plaintiffs, Dr. Hamlin, and the Honorable Frederick E. Crane, then at the bar, and now a learned county judge of Kings county. The witnesses are not in accord as to the order of suggestion of administrators. It is testified that the defendant Ward was first suggested, but that she demurred, as not being a woman of business. It is testified that Cloutier was first suggested, to be associated with another. And it is testified that Neill was first suggested. But the witnesses substantially agree that Cloutier raised a fancied legal objection to Neill, and that those present agreed that Cloutier and Ward should be the administrators. Ward testifies that after discussion "the gentlemen, and all with one voice, said, 'Mrs. Ward, you had better act as administratrix.' Then I again said, 'Will there be much to do, as I am not a business woman?' and they said: 'Mr. Cloutier will be the active administrator. You will simply have to sign the papers he brings you.' Q. Who said that? A. The gentlemen, all with one voice; and Mr. Palmer and Mr. Martin, of course, had a great deal to say in it. They were speaking generally." Mrs. Neill testifies: "So mamma then said again: 'I am not a business woman, and know very little about business. Will there be much for me to do?' and they one and all said, 'Mrs. Ward, it will be simply to sign such papers as Mr. Cloutier brings to you.' And with that understanding my mother consented to serve as administratrix. * * * I couldn't say clearly which one said it, but, as I said, they all spoke and agreed to it, and each one was talking, and probably each one may have said it." She further testifies that Mr. Palmer said that he thought Mr. Cloutier should act as administrator with her

mother. Dr. Hamlin testifies that during the discussion Mrs. Ward did say that she was not a business woman, and that she thought her daughter, who was a business woman, would be a better choice. He testifies that Mrs. Ward suggested the help of a coadministrator, and that it was the general feeling that Cloutier should be joined with her in the administration, though he thought Mrs. Ward first named him. "Q. Was any suggestion of that kind made that all that Mrs. Ward had to do was to sign her name—that Cloutier would do everything else—by Palmer or Martin? A. I think it was said by some one that the estate was in such a condition that there would be very little worry attached to it. With a legal adviser like Mr. Cloutier she would not be worried very much. Q. Did Mr. Palmer or Mr. Martin at any time there say that Mrs. Ward would have nothing to do but sign her name? A. No, sir." Mr. Martin admits that Mrs. Ward demurred on the ground of her lack of business experience, but testifies: "I did not, nor did Mr. Palmer, at any time say that it was a formal matter for Mrs. Ward, and that all she would have to do would be to sign such papers as Cloutier brought to her. I never heard it. I heard every thing. I did hear what was said there. Nothing like that was said." Judge Crane testifies: "Neither Mr. Martin nor Mr. Palmer said that Mrs. Ward would have nothing to do but sign her name, and that Mr. Cloutier would do all the work; not in my presence. I was not there all the time. I was out of the room for ten or fifteen minutes. Some one came from my house—was sent to Mr. Ward's house—to see me, and I went in the back parlor for ten or fifteen minutes. When I came back, Mr. Cloutier turned around and said he had got to have bondsmen. 'Who is going our bond?' * * * Q. Are you able to state positively that while you were in the room nothing was said to Mrs. Ward about what duties she had to perform? A. I do not recall anything more than that Mr. Cloutier said: 'I will act with you. I know all about the affairs. I have been Mr. Ward's partner. It will not take long to settle it up. I will act with you;' and that seemed satisfactory to them. Q. Didn't he say that in the future he would take charge of everything? A. I would not like to say that he said any particular expression or did not say it. Mrs. Ward did not ask what her duties would be. I don't remember that something was said that they would be very light, and only consent in signing the papers that Mr. Cloutier would bring to her. I don't remember any such thing, except as it might be embodied in what Mr. Cloutier said. As I told you, I was out of the room for fifteen minutes, and the back parlor was pretty cold, I remember." It is to be noted that two interested witnesses testify one way and two interested witnesses the other. Of the two disinterested witnesses, Judge Crane and Dr. Hamlin, the latter is against the version of the defendants. The testimony of Judge Crane is not essentially contradictory, for the reason that he was absent from the meeting for 15 minutes. It was not necessary for the learned Special Term to impute falsehood to the witnesses against whose version the finding is made. Few witnesses, after the lapse of considerable time, can readily remember or accurately state the particulars and the details of an informal discus-

sion participated in by several persons. The version of Ward and · Neill is not inherently improbable, but entirely consistent with the situation. Mrs. Ward· was evidently suggested without regard to any business qualifications, because she was the mother of the intestate. Self-interest and maternal affection would naturally be assumed as qualifying her to discharge her duties, provided she was associated with a coadministrator who was a lawyer, and who was intimately acquainted with the business affairs of the intestate. Such, apparently, was Cloutier. He was a lawyer, and had been the partner of the intestate up to the time of his death. Mr. Palmer, who had been a client of the firm of Ward & Cloutier, and more particularly a client of the intestate, testifies that he believed in Cloutier, and that, inasmuch as the intestate had selected him as a partner, he believed in his judgment as a lawyer. Mr. Martin, though not intimate with Cloutier, had known him for five or six years, and was a friend of Mr. Palmer. Judge Crane testifies that everybody had confidence in Cloutier, and that he had never heard aught against him up to the time of the interview. We would not be justified in reversing this finding of the trial court unless the proof so clearly preponderates to an adverse conclusion that it could be said with reasonable certainty that the court erred in its conclusion. Stokes v. Stokes, 155 N. Y. 581, 50 N. E. 342; Foster v. Bookwalter, 152 N. Y. 166, 46 N. E. 299; Lowery v. Erskine, 113 N. Y. 52, 20 N. E. 588. This we cannot say.

If, then, Ward consented to apply for the letters jointly with Cloutier, · and accepted the grant thereof with the general understanding, assented to by the plaintiffs, that her conduct should be nominal and passive, and that Cloutier should be the active administrator of the estate, and if the plaintiffs represented to her that all she need do was to sign the papers that Cloutier brought to her, and if she accepted and discharged the office perforce of such representations, then I think that the sureties cannot prevail in this suit as against Ward. If the sureties were content to become liable for the joint administration of Cloutier and Ward, under an arrangement that Ward should do no more than sign all papers presented to her by Cloutier, they had the right thus to extend, or only thus to limit, their liability. U. S. N. Bank v. Ewing, 131 N. Y. 506, 30 N. E. 501, 27 Am. St. Rep. 615; Benjamin v. Rogers, 126 N. Y. 60, 26 N. E. 970. Certainly, as against Ward, they cannot assert that they had no power thus to do, for no question of public policy is involved as between them. There is no proof that Ward was guilty of any fraud, and the proof does not warrant the finding of misconduct or of negligence so far as the sureties are concerned. True, they would be entitled to "full indemnity against the consequences of her default." Thompson v. Taylor, 72 N. Y. 32. But of what default, as to the sureties, is she guilty? At one and the same interview they said to her that, if she became administratrix, she need but to sign such papers as Cloutier brought to her, and thereupon they agreed to be sureties. Can they now be heard· to say that when she became administratrix, and acted exactly as they told her she might act, thereupon promising to be sureties, she is nevertheless in default as to them?

The plaintiffs, in effect, said, "If you do this thing in this way, we are satisfied to be your sureties," and they now say, "Thus acting, you are in default to us." The question now arises only between them and her. The question as to the discharge of her duties with reference to other persons is not presented. On the other hand, I question whether Ward would be answerable to the plaintiffs for whatever sum they might be required to pay for the default of Cloutier. It is true that the court in Sperb v. McCoun, 110 N. Y. 605, 610, 18 N. E. 441, 1 L. R. A. 490, says that the general proposition has been apparently so decided in some cases; not, however, citing any decision in this state. Reference to one of the authorities cited (Brazier v. Clark, 5 Pick. 96) indicates the basis of such doctrine. In that case the court put such liability on this ground:

"All executors, while living and in the enjoyment of the trust, may inspect and control the conduct of each other. They may watch over the funds, and they may complain of the misconduct of any one to the judge of probate, who may, in his discretion, remove him from the trust; and so there may be no great hardship in their being made answerable for each other."

But in this case, if the sureties could recover of Ward, then it would be based upon her alleged negligence or misconduct in being passive —in not taking an active part in the trust. But the sureties represented to her that she might remain passive, relying wholly upon Cloutier. It would be illogical to hold that she was not negligent as to them, so far as her conduct of the estate was concerned, in the light of their representations and assurances, and yet, when the sureties are compelled to make Cloutier's default good, hold her as to them because she was not active in her trust.

I think that the judgment which determines that the sureties are liable and that Ward is not liable to them for fraud, negligence, or misconduct must be affirmed, with costs. All concur.